William Burney BURKE

v.

The STATE of Texas State.

No. 2–98–185–CR.

Court of Appeals of Texas,
Fort Worth.

May 9, 2002.

Greg Westfall, Westfall & Platt, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., Charles M. Marlin, Chief of Appellate Section, Sylvia Mandel, Sharon A. Johnson, Tim M. Bednarz, Asst. Dist. Attys., Fort Worth, for state.

PANEL B: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

## OPINION ON REHEARING

LEE ANN DAUPHINOT, Justice.

We grant the State's motion for rehearing, withdraw our opinion and judgment issued November 1, 2001, and substitute the following in their place.

## INTRODUCTION

Appellant William Burney Burke appeals from his convictions for reckless aggravated assault and intoxication assault. On original submission, we vacated Appellant's aggravated assault conviction and affirmed his conviction for intoxication assault without addressing his arguments that his plea of guilty to the aggravated assault count of the indictment was involuntary and should have been withdrawn sua sponte by the trial court when the evidence raised an issue as to his innocence of that charge.[1]

On the State's petition for discretionary review, the court of criminal appeals reversed our judgment and remanded this cause "to re-consider the question of what remedy is appropriate."[2] We must first determine, however, whether Appellant's complaints, raised on original submission of this case, challenging the voluntariness of his plea of guilty to the charge of reckless aggravated assault and the trial court's failure to withdraw that plea, have merit. Because we hold that his plea was involuntary and should have been withdrawn by the trial court when the evidence fairly raised an issue as to his innocence, we affirm Appellant's conviction for intoxication assault, reverse his conviction for aggravated assault, and remand this cause for a new trial on the charge of aggravated assault.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 24, 1997, Appellant drove his automobile while intoxicated, ran a red light, and collided with the automobile driven by Armon Hunter, who suffered serious bodily injury as a result of the collision. Appellant was charged in count one of the indictment with reckless aggravated assault causing serious bodily injury[3] and in count three of the indictment with intoxication assault.[4] Appellant pled guilty to both count one and count three. The jury found him guilty of both offenses and assessed his punishment at fifteen years' and ten years' confinement, respectively. The trial court entered judgment on the jury's verdict and ordered the sentences to run concurrently.

---

1. *Burke v. State,* 6 S.W.3d 312, 318 (Tex.App.-Fort Worth 1999), pet. granted, judgm't vacated, 28 S.W.3d 545 (Tex.Crim.App.2000).

2. *Burke,* 28 S.W.3d at 549.

3. TEX PENAL CODE ANN. § 22.02(a)(1) (Vernon 1994).

4. *Id.* § 49.07 (Vernon Supp.2002).

On original submission, we vacated Appellant's conviction for aggravated assault and affirmed his conviction for intoxication assault.[5] Relying on the court of criminal appeals' decision in *Ex parte Ervin*,[6] we held that reckless aggravated assault causing serious bodily injury and intoxication assault causing serious bodily injury are the same offense for double jeopardy purposes when they involve the same victim, and, therefore, imposing convictions for both offenses in this situation violates the Double Jeopardy Clause, even when the sentences are set to run concurrently.[7]

■ The court of criminal appeals granted the State's petition for discretionary review and, while it did not ostensibly disturb our holding that imposing convictions for both reckless aggravated assault causing serious bodily injury and intoxication assault violates the double jeopardy prohibition against multiple punishments, the court did disagree with our remedy.[8] The court termed the rule of statutory construction that we relied upon as *"pari materia."*[9] Statutes that are in *pari materia* share a common purpose and are to be construed together.[10] The court explained:

> In the case of two statutes that are in *pari materia*, the State is required to prosecute under the specific provision. Thus, where the State has prosecuted under both the general and specific provisions and obtained convictions under both, the appropriate remedy is to affirm the conviction that the State should have prosecuted and vacate the other.[11]

Accordingly, if the two offenses at issue in this case are, indeed, in *pari materia*, then our remedy was appropriate. If, however, the offenses are not in *pari materia*, then our remedy may have been in error.[12] Thus, the court of criminal appeals granted review "limited to the question of whether aggravated assault and intoxication assault are in *pari materia*."[13] The court held that the offenses are not in *pari materia* because,

> [w]hile they could both conceivably cover the same general class of persons and the same result of conduct, "[i]n object or purpose … a clear and marked difference exists between the two provisions." Moreover, there is no indication that the two provisions, directed at different classes of persons, one being a strict liability offense and the other requiring *mens rea*, were intended to be considered together.[14]

The court concluded that, because the two provisions are not in *pari materia*, "it follows that one provision could not be considered controlling as to the other. Thus, the State had discretion as to which offense to prosecute."[15] The court vacated our judgment and remanded this cause for our reconsideration of the appropriate remedy.[16]

## DOUBLE JEOPARDY VIOLATION

■ Our holding below that Appellant's conviction for aggravated assault must be

5. *Burke*, 6 S.W.3d at 318.

6. 991 S.W.2d 804, 817 (Tex.Crim.App.1999).

7. *Burke*, 6 S.W.3d at 316.

8. *Burke*, 28 S.W.3d at 546, 549.

9. *Id.* at 546.

10. *Id.* at 549.

11. *Id.* at 547 n. 3.

12. *Id.* at 547.

13. *Id.*

14. *Id.* at 549 (citations omitted).

15. *Id.* at 549.

16. *Id.*

reversed due to the involuntary nature of his plea raises the question of whether the multiple-punishments double jeopardy issue is presently before us. In its motion for rehearing, the State asserts that it will not contest this court's conclusion that Appellant's plea of guilty to the charge of aggravated assault was involuntary. The State argues that in light of our holding in this regard, the intoxication assault conviction should be affirmed because Appellant's double jeopardy claim has been mooted, as he is no longer being punished twice for the same offense. Furthermore, the State points out:

> The double jeopardy claim, if any, is not ripe until, or if and when, the State seeks to punish Appellant for an aggravated assault arising from the same transaction and victim. This will never occur since this court and the court of criminal appeals have held that to do so would violate the constitutional prohibition against the multiple punishments branch of the double jeopardy clause.

We are persuaded that the State's reasoning is correct. We also note that in his brief on remand, Appellant states: "[I]f the Court agrees with Issues One or Two, that Appellant's conviction for aggravated assault should be reversed, the 10–year maximum sentence for intoxication assault will nevertheless stand. If so, *Ervin* will not affect the relief granted." Because we now hold that Appellant's conviction for aggravated assault must be reversed, the double jeopardy issue is no longer before us. Appellant does not otherwise challenge his conviction for intoxication assault. We therefore affirm the trial

court's judgment as to count three of the indictment.

## VOLUNTARINESS

On original submission of this case, Appellant, in addition to complaining of a double jeopardy violation, also challenged the voluntariness of his plea of guilty to the reckless aggravated assault charge and argued that the trial court should have sua sponte withdrawn his plea of guilty to that charge when the evidence raised an issue of his innocence.[17] Due to our disposition of the double jeopardy issue in our opinion on Appellant's petition for discretionary review and on the State's amended petition for discretionary review, it was unnecessary for us to address Appellant's other complaints regarding the aggravated assault conviction. Because a determination of those issues is now necessary to a final disposition of this appeal, however, we address them today.[18]

In his first issue on remand, Appellant contends that the trial court erred in denying his motion for new trial because his plea of guilty to the charge of reckless aggravated assault contained in count one of the indictment was involuntary. The reckless act alleged in the indictment was that Appellant ran a red light. Appellant argues that he would not have pled guilty had he understood that the State was required to prove that he was actually aware of a substantial and unjustifiable risk that his conduct would cause serious bodily injury to another and that he consciously disregarded such risk.[19]

A trial court's ruling denying a defendant's motion for new trial is reviewed under an abuse of discretion stan-

17. *Burke,* 6 S.W.3d at 315.

18. *See* Tex.R.App. P. 47.1; *Light v. State,* 15 S.W.3d 104, 105 (Tex.Crim.App.2000) ("The courts of appeals are required to review every

argument raised by a party that is necessary to the disposition of that appeal.").

19. *See* Tex. Penal Code Ann. § 6.03(c) (Vernon 1994).

dard.[20] In considering a motion for new trial, the trial court possesses broad discretion in determining the credibility of the witnesses and in weighing the evidence to determine whether a different result would occur upon retrial.[21] We do not substitute our judgment for that of the trial court, but rather, we decide whether the trial court's decision was arbitrary or unreasonable.[22]

Count one of the indictment alleged that Appellant did

> RECKLESSLY, TO–WIT: BY OPERATING AN AUTOMOBILE AND FAILING TO STOP AT A RED LIGHT CAUSE SERIOUS BODILY INJURY TO AN INDIVIDUAL, ARMON HUNTER, BY COLLIDING THE AUTOMOBILE THE DEFENDANT WAS OPERATING INTO AN AUTOMOBILE OPERATED BY ARMON HUNTER.

In his affidavit, attached to Appellant's motion for new trial, Appellant's trial counsel stated that he relied on case law establishing that driving while intoxicated constitutes "recklessness per se" when he advised Appellant to plead guilty to count one of the indictment.

> I advised Mr. Burke he should plead guilty to both Count 1 and Count 3 of the indictment because I believed that the State had overwhelming evidence that Mr. Burke drove while intoxicated and that he had lost the normal use of his mental and physical faculties. Because of that intoxication, he failed to stop his automobile for a red light and collided with Armon Hunter's car which caused Mr. Hunter to sustain serious bodily injury.

> I relied on the well established case law that driving while intoxicated constitutes "recklessness per se," when I advised Mr. Burke to plead guilty to Count 1, aggravated assault, as well as Count 3, intoxication assault. . . .

> Because I believed that driving while intoxicated constituted "recklessness per se", I did not advise Mr. Burke that the State would have to prove that he was "actually aware" that the light was red when he failed to stop at the intersection, and that he "consciously disregarded" the risk of causing serious bodily injury when he failed to stop for the red light. I did not explain that before a person is deemed to be "reckless" there must actually be both a substantial and an unjustifiable risk that the circumstance exist[s] or that the result will occur, and that the person acting was actually aware of such risk and consciously disregarded it as I believe[d] that driving while intoxicated constituted "recklessness per se."

> Count 1 alleged that Burke acted "recklessly" when he engaged in the conduct that caused Hunter's serious bodily injury.

> Count 3 alleged that Burke caused Hunter's serious bodily injury by reason of driving while intoxicated, which in my opinion also meant that Burke acted "recklessly" when he engaged in the same conduct (collided with Hunter's car), and caused the same result (i.e. "serious bodily injury"), to the same person, Armon Hunter.

20. *Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim.App.), *cert. denied*, —— U.S. ——, 122 S.Ct. 127, 151 L.Ed.2d 82 (2001); *Lewis v. State*, 911 S.W.2d 1, 7 (Tex.Crim.App.1995); *Thomas v. State*, 31 S.W.3d 422, 428 (Tex. App.-Fort Worth 2000, pet. ref'd).

21. *Valle v. State*, 963 S.W.2d 904, 908 (Tex. App.-Texarkana 1998, pet. ref'd); *Dusenberry v. State*, 915 S.W.2d 947, 949 (Tex.App.-Houston [1st Dist.] 1996, pet. ref'd).

22. *Lewis*, 911 S.W.2d at 7.

I advised Mr. Burke to plead guilty to both counts because I believed that the State had an open and shut case; and that Burke would risk alienating the jurors if he did not affirmatively accept responsibility for his conduct.

. . . .

I believe that the State would have had substantial difficulty in proving beyond a reasonable doubt that Mr. Burke was actually aware that the light had turned red when he drove his car into the intersection, and thereby caused the wreck which injured Mr. Hunter.

But, I had no reason to doubt that the State could prove that Burke was driving while intoxicated when he ran the red light and caused the wreck and Mr. Hunter's injury. Because I believed that driving while intoxicated constituted "recklessness per se", I was convinced that Mr. Burke had no better defense against Count 1 than he did against Count 3.

Appellant's own affidavit is consistent with that of his trial counsel, reading in part as follows:

When I pled guilty to Count 1 of the indictment, I had not been informed by anybody that before a person is deemed to be "reckless" there must actually be both a substantial and an unjustifiable risk that the circumstances exist or that the result will occur, and that the person acting was actually aware of such risk and consciously disregarded it.

I knew that I had driven while intoxicated, that I had lost the normal use of my mental and physical faculties, and that I had been in a wreck that caused Armon Hunter's serious bodily injury. I did not remember running the red light, but I assumed that I must have, because I believed that Mr. Hunter told the truth when he stated that he had the green light.

Had I known that the State was required to prove that I was "actually aware" that the light had turned red, and that I had "consciously disregarded a substantial and unjustifiable risk" that I would cause serious bodily injury when I failed to stop for the red light, in order to convict me of aggravated assault, I would have [pled] "not guilty" to Count 1.

When I pled guilty to Count 1 I believed that driving while intoxicated and running a red light automatically constituted "recklessness," and I believe[d] that I caused Armon Hunter's serious bodily injury. That is the only reason I pled guilty to Count 1 of the indictment.

During cross-examination of Appellant by the State at the hearing on the motion for new trial, the following exchange occurred:

Q. My point being, you had had other collisions and accidents when you were driving drunk prior to the one that you were tried for a couple months ago?

A. There were other incidents, yes, sir.

Q. And would it be fair to say that based upon those incidents, that you were aware that whenever you would consume alcohol and get behind the wheel of a car, that there's a substantial risk where somebody could get hurt?

A. No, sir, I don't believe that I was aware of that.

. . . .

Q. Well, not intentionally. I mean, I'm not saying that you intentionally intended to hurt someone. But what I'm saying is whenever you'd get behind the wheel of a car after having consumed alcohol, and especially on this occasion, would it be fair to say that based upon your history of causing collisions that although you may not have intended to hurt anybody, you were aware at least

that there was a risk—a substantial risk—that a collision could occur and you could hurt somebody?

A. I don't think that crossed my mind when I drove. I don't think that I was aware that I was doing a risky thing at that particular moment in time.

. . . .

Q. Had you had the opportunity prior to trial to go over the indictment and the two different counts with your attorney?

A. It came up rather fast, but we did go over what I was charged with.

. . . .

Q. All right. And clearly the two different counts in the indictment that you pled to are different, right?

A. Yes, sir, I'm aware of that now.

Q. Well, I mean, count three alleges that you were driving while intoxicated. Count one simply alleges that you were reckless and that you ran a red light, correct?

A. I'm aware of that now.

Q. Well, are you saying you weren't aware of it at the time?

A. Basically, I was aware that I was being charged with driving while drunk, and that that was the whole thing. As far as breaking down each little bits of the indictment, that was the whole thing in a nutshell as it was explained to me.

Q. But there are two separate counts in that indictment. Did you inquire of your attorney why the State was charging you with two separate charges or two separate counts when it was really one incident where you were driving drunk?

A. Just because the State could. Like I just said, my understanding was the whole thing was just a drunk driving charge. And that's the way I understood it.

Q. So you're telling us that it was your understanding that count one, if I've got the counts right, the count that alleges that you were just reckless and ran a red light, says nothing about intoxication.

Are you telling the Court that it was your understanding that the State was somehow required to prove intoxication for that count as well?

A. I don't think I was aware of all those ramifications, no, sir, as far as the light and the burden of proof as far as all that's concerned, no, sir. Just the drunk driving, that I was driving while drunk.

. . . .

Q. Well, were you aware of a substantial risk that running a red light could occur?

A. I don't think that I thought of running a red light, and I'm not aware that I did.

Q. I'm not asking you—I'm not saying you did that intentionally.

A. I'm not aware that I ran a red light.

Q. But my question is were you aware that there was a risk that that could happen?

A. I never thought about it and prethink that there was a risk of running a red light.

Q. Were you aware that a collision could occur, that that was a risk?

A. I hadn't pre-thought that a collision would occur.

Q. Well, I'm not really asking if you were aware of if you knew that a collision would occur. It's were you aware that there was a risk that a collision would occur?

A. I suppose there's a risk anytime anybody gets in a car. As far as prethinking that I was going to be more prone to it, I didn't pre-think that. I

didn't determine that in my mind ahead of time.

In his affidavit, Appellant's trial counsel stated that he relied on *Ormsby v. State*[23] in advising Appellant to plead guilty to both counts of the indictment. In *Ormsby*, the court of criminal appeals held that criminally negligent homicide is a lesser included offense of involuntary manslaughter under former Texas Penal Code section 19.05(a)(2).[24] At that time, a person committed the offense of involuntary manslaughter if he "by accident or mistake when operating a motor vehicle while intoxicated and, by reason of such intoxication, causes the death of an individual."[25] Because the involuntary manslaughter statute neither prescribed a culpable mental state nor plainly dispensed with any element of mental culpability, proof of a culpable mental state was required.[26] Thus, relying on the practice commentary to section 19.05, the *Ormsby* court concluded that the act of driving while intoxicated under section 19.05(a)(2) amounted to recklessness *per se*.[27] Because criminal negligence was a lesser culpable mental state than recklessness, the court held that criminally negligent homicide is a lesser included offense of involuntary manslaughter.[28]

In 1994, the offense of involuntary manslaughter under penal code section 19.05(a)(2) was modified and placed in chapter 49 of the penal code as the offense of intoxication manslaughter.[29] Section 49.08 does not require proof of a culpable mental state. Indeed, all of the intoxication offenses under chapter 49, including intoxication assault under section 49.07, are strict liability offenses.[30] As the court of criminal appeals clarified in the case now before us,

> [A]n offense under § 49.07 is entirely dependent upon the defendant's status as an intoxicated driver, but his mental state is irrelevant. A showing of intoxication replaces a showing of mens rea under § 49.07. By specifying that the defendant's actions were "by accident or mistake," § 49.07 even further emphasizes the irrelevance of the defendant's mental state.
>
> All of the offenses under Chapter 49 are strict liability offenses.... The focus of these provisions is the consumption of alcohol in connection with an activity that places others in danger.[31]

Accordingly, the necessity for the construct of driving while intoxicated

---

**23.** 600 S.W.2d 782 (Tex.Crim.App. [Panel Op.] 1979).

**24.** *Id.* at 783–84.

**25.** Act of May 24, 1973, 63rd Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, 913 (amended 1987, 1993) (current version at Tex. Penal Code Ann. § 49.08 (Vernon Supp.2002)).

**26.** *See* Tex. Penal Code Ann § 6.02(b) (Vernon 1994) ("If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element.").

**27.** *Ormsby*, 600 S.W.2d at 783–84; *Gowans v. State*, 995 S.W.2d 787, 792–93 (Tex.App.-

Houston [1st Dist.] 1999, pet. ref'd); *Reidweg v. State*, 981 S.W.2d 399, 406 (Tex.App.-San Antonio 1998, no pet.) (op. on reh'g).

**28.** *Ormsby*, 600 S.W.2d at 784.

**29.** Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3697 (amended 1999) (current version at Tex. Penal Code Ann. § 49.08).

**30.** *See* Tex. Penal Code Ann. § 49.11 (Vernon Supp.2002) ("Notwithstanding Section 6.02(b), proof of a culpable mental state is not required for conviction of an offense under this chapter.").

**31.** *Burke*, 28 S.W.3d at 549.

as recklessness per se was eliminated by the Legislature's enactment of the chapter 49 intoxication offenses, which clearly dispenses with any requirement of mental culpability. Additionally, as the State pointed out in its original brief to this court, there is no indication in the case law that the doctrine ever had any application beyond prosecutions for involuntary manslaughter under former penal code section 19.05(a)(2). Trial counsel's reliance on the doctrine of recklessness per se in advising Appellant regarding his prosecution for reckless aggravated assault was, therefore, misplaced.

In contrast to the strict liability offense of intoxication assault, however, is the offense of aggravated assault under section 22.02 of the penal code.[32] As the court of criminal appeals points out,

> Under § 22.02, nothing about the defendant matters with the exception of his mental state. He must have acted intentionally, knowingly, or recklessly....
>
> While certainly a defendant might have consumed alcohol while committing an offense against a person under Chapter 22, none of the provisions include any reference to alcohol. The focus of the Chapter 22 provisions is intentional, knowing or reckless infliction of harm to others.[33]

Here, the State alleged that Appellant committed the offense of aggravated assault by recklessly causing serious bodily injury to an individual. Accordingly, an essential element of the offense was that Appellant was aware of but consciously disregarded a substantial and unjustifiable risk that his actions would cause serious bodily injury to another.[34] Specifically, the State would have had to prove beyond a reasonable doubt that Appellant was aware of but consciously disregarded a substantial and unjustifiable risk that his actions in failing to stop at a red light while operating a motor vehicle would cause serious bodily injury to another. Reckless conduct involves conscious risk creation.[35] Consequently, the allegation that Appellant acted recklessly in failing to stop at a red light necessarily implies that Appellant was aware that the light was red when he drove his car into the intersection. The indictment did not allege that Appellant was reckless by driving while intoxicated.

It is well established that when the State alleges a culpable mental state of "recklessly," the State must show that the defendant perceived the risk created by his conduct. In *Arellano v. State*, the Waco court held that the evidence was sufficient to show that the defendant consciously disregarded the risk created by his conduct so as to support his conviction for manslaughter where the defendant was driving his vehicle at a speed twenty to thirty miles per hour over the speed limit when he collided with the victim's vehicle, and road signs clearly indicated a stop sign ahead, warning motorists to reduce their speed.[36] The evidence revealed that the defendant attempted to avoid a collision by braking.[37] The court held, however, that "Arellano's reckless conduct up to the

---

32. TEX. PENAL CODE ANN. § 22.02.

33. *Burke*, 28 S.W.3d at 549.

34. *See* TEX PENAL CODE ANN. § 6.03(c).

35. *Lewis v. State*, 529 S.W.2d 550, 553 (Tex. Crim.App.1975).

36. 54 S.W.3d 391, 394 (Tex.App.-Waco 2001, pet. ref'd).

37. *Id.*

point of his braking made his efforts to avoid the collision futile." [38]

In *Newman v. State,* the court held that the evidence was sufficient to show conscious risk creation where the appellant was driving at eighty-seven miles per hour on a two-lane, hilly country road with a forty-five mile per hour speed limit, moved into the opposing lane of traffic to pass another vehicle, and continued traveling in the opposing lane as she proceeded up a hill, striking the victim's car as she crested the hill.[39] In *Cooks v. State,* the Houston court held that there was sufficient evidence that the defendant was aware of the risk of traveling at a speed of approximately one hundred miles per hour in a fifty-five miles per hour zone, where the defendant was a licensed driver, the posted speed limit was fifty and then fifty-five miles per hour shortly before the intersection where the accident occurred, and accident reconstruction experts determined that the defendant was still traveling at seventy miles per hour after the impact.[40]

In *LaSalle v. State,* the court found the evidence sufficient to support the appellant's conviction for recklessly causing serious bodily injury to child who was a passenger in his car, where the appellant operated his vehicle at a speed of fifty miles per hour in a thirty-five miles per hour zone and ran through at least two stop signs before failing to obey another stop sign at the intersection where the collision occurred.[41] There, the defendant testified that he saw this last stop sign, but decided to accelerate through the in-

tersection rather than slam on his brakes.[42]

Similarly, in *Rodriguez v. State,* the Corpus Christi court held that the evidence was sufficient to support the defendant's conviction for recklessly causing another motorist's death where the defendant admitted that she had gone around a curve in the road too fast.[43] The court explained:

[A] rational trier of fact could have believed that appellant's statement that she took the corner too fast indicated that she was aware of the risk presented by the sharp curve before she entered it, knew that she was [traveling] at an inappropriate rate of speed, and yet disregarded the danger.[44]

In the case now before us, although Appellant pled guilty to the charge of reckless aggravated assault, at the trial on punishment he specifically denied seeing a red light. In his affidavit in support of the motion for new trial, Appellant's trial counsel stated that because he believed that driving while intoxicated constituted recklessness per se, he did not advise his client as to the meaning of "recklessly." Counsel stated that he relied on his belief that driving while intoxicated constituted recklessness per se in advising Appellant to plead guilty, believing that the State had "overwhelming evidence" that Appellant drove while intoxicated and because of that intoxication, failed to stop at a red light and collided with Hunter's vehicle, causing Hunter serious bodily injury. Appellant's own affidavit and testimony indicate that

38. *Id.*

39. 49 S.W.3d 577, 579–80 (Tex.App.-Beaumont 2001, pet. ref'd).

40. 5 S.W.3d 292, 296 (Tex.App.-Houston [14th Dist.] 1999, no pet.).

41. 973 S.W.2d 467, 473–74 (Tex.App.-Beaumont 1998, pet. ref'd).

42. *Id.* at 471.

43. 834 S.W.2d 488, 489–90 (Tex.App.-Corpus Christi 1992, no pet.).

44. *Id.* at 490.

he relied on his counsel's advice in making the decision to enter pleas of guilty to both counts of the indictment.

In his testimony at the hearing on Appellant's motion for new trial, Appellant's trial counsel acknowledged that he understood the difference between the two counts alleged in the indictment in that count one, charging reckless aggravated assault, would have required the State to prove that Appellant ran a red light. Counsel also stated that he "hope[d]" that Appellant understood this distinction as well. There was no testimony, however, disputing counsel's assertions in his affidavit that he did not inform Appellant that the State would have to prove that he acted recklessly, as that term is defined in the penal code.

■■■ No plea of guilty shall be accepted by the court unless it is freely and voluntarily given.[45] Due process requires that each defendant who pleads guilty does so with a "full understanding of the charges against him and the consequences of his plea."[46] A defendant's election to plead guilty, when based upon erroneous advice of counsel, is not done voluntarily and knowingly.[47] In other words, a guilty plea will not support a conviction where that plea is motivated by significant misinformation conveyed by defense counsel.[48] A plea of guilty based upon such misinformation is involuntary.[49] In considering the voluntariness of a guilty plea, we examine the record as a whole.[50]

In *Henderson v. Morgan*, the United States Supreme Court confronted the issue of whether a defendant may enter a voluntary plea of guilty to a charge of second-degree murder when he was not informed that intent to cause the death was an element of the offense.[51] The Court noted that a plea may be involuntary because an accused "has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary."[52] The *Henderson* Court found that, where neither counsel nor the trial court explained to the defendant that an intent to cause the death was an essential element of second-degree murder, and where the defendant made no admission that he had the requisite intent and testified that he would not have pled guilty if he had known that an intent to cause death was an essential element of the offense, the defendant's plea of guilty was involuntary.[53] The Court reasoned, "[T]he plea could not be voluntary in the sense that it constituted an intelligent admission that he committed the offense unless the defendant received 'real notice of the true nature of the charge against him,

45. TEX.CODE CRIM. PROC. ANN. art. 26.13(b) (Vernon 1989).

46. *Basham v. State*, 608 S.W.2d 677, 678 (Tex.Crim.App. [Panel Op.] 1980).

47. *Ex parte Battle*, 817 S.W.2d 81, 83 (Tex. Crim.App.1991).

48. *Ex parte Kelly*, 676 S.W.2d 132, 134–35 (Tex.Crim.App.1984); *Cardenas v. State*, 960 S.W.2d 941, 943 (Tex.App.-Texarkana 1998, pet. ref'd).

49. *Cardenas*, 960 S.W.2d at 943.

50. *Martinez v. State*, 981 S.W.2d 195, 197 (Tex.Crim.App.1998); *Williams v. State*, 522 S.W.2d 483, 485 (Tex.Crim.App.1975).

51. 426 U.S. 637, 638, 96 S.Ct. 2253, 2254, 49 L.Ed.2d 108 (1976).

52. *Id.* at 644, n. 13, 96 S.Ct. at 2257 n. 13.

53. *Id.* at.643–47, 96 S.Ct. at 2257–59.

the first and most universally recognized requirement of due process.' " [54]

Here, the trial court, in overruling Appellant's voluntariness challenge at the close of the hearing on the motion for new trial, indicated that his decision was based upon an evaluation of Appellant's credibility: "[T]he Court being the judge of the weight and credibility of all testimony, having heard the Defendant's testimony on multiple occasions on various matters, as the law as it is on the issues raised, I'm going to overrule [ground number] four." Appellant's testimony at the hearing dealt in large part with whether he was aware of the red light. Such testimony, while relevant to Appellant's guilt, is not determinative on the issue of the voluntariness of his plea. Moreover, Appellant's testimony at the hearing on the motion for new trial regarding his understanding of the elements of the offense of aggravated assault in this case was consistent with his trial counsel's recollection of the manner in which he advised Appellant and was supported by Appellant's testimony at trial. At trial, Appellant denied seeing a red light, but persisted in pleading guilty to reckless aggravated assault by running a red light.

In short, Appellant's post-trial testimony indicates that he was misinformed regarding the nature of the charge against him, and his attorney's testimony indicates that counsel was the source of this misinformation. By counsel's own admissions, Appellant was not adequately informed of an important distinction between the two offenses he had been charged with, one requiring proof of a specified mental state, and the other, a strict liability offense. Indeed, counsel admitted that he had misinformed Appellant because he believed that driving while intoxicated constituted recklessness per se. Under both Appellant's and his attorney's misunderstandings, Appellant was pleading guilty to essentially one and the same offense, consisting of the elements of driving while intoxicated and causing serious bodily injury. While these two elements, taken together, make up the proof necessary to sustain a conviction for intoxication assault, they are not sufficient to support a conviction for reckless aggravated assault.

Furthermore, a careful reading of the record shows that Appellant and his trial counsel were not alone in their misunderstanding of the elements of proof necessary to support a conviction for aggravated assault under count one of the indictment. Both the prosecution and the trial judge clearly believed that count one required only proof that Appellant knew that when he drove while intoxicated, there was a "substantial risk that running a red light could occur" or that "a collision would occur." In ruling on Appellant's motion for new trial, the trial judge remarked,

[I]f there's a culpable mental state to count one, do you have to prove that you—you're arguing this, as I understand it, it's like you have to intentionally or knowingly fail to stop at a red light versus recklessly failed to stop at a red light.

My opinion at the time of trial is if you're driving while intoxicated, that you're running the risk you're going to commit traffic violations of any nature, especially in the light of the evidence presented in front of this jury, and that he recklessly ran the red light. That's a different issue. If you have to prove he knew the light was red, you might have

---

**54.** *Id.* at 645, 96 S.Ct. at 2257–58 (quoting *Smith v. O'Grady,* 312 U.S. 329, 334, 61 S.Ct. 572, 574, 85 L.Ed. 859 (1941)).

a point. I'm not sure what the law requires as pled.

Apparently, all the parties involved in this case believed that proof of driving while intoxicated also proved the culpable mental state of recklessly; that is, they believed that driving while intoxicated is recklessness per se. Appellant was not, however, charged with recklessly running a red light by driving while intoxicated. Rather, he was charged with recklessly causing serious bodily injury by running a red light and colliding with Hunter's vehicle. The allegation that Appellant acted recklessly by running a red light requires proof that Appellant perceived the risk of serious bodily injury to another created by his conduct and consciously disregarded that risk by failing to stop at the red light.[55]

We point out that Appellant does not contend that his counsel rendered ineffective assistance. We, therefore, do not decide that issue. Rather, Appellant argues that his decision to enter a plea of guilty to the aggravated assault charge was not knowingly and intelligently made, as it was based upon advice of counsel, which, in turn, was predicated upon a misunderstanding of the law as it relates to the elements of the offense. The record before us affirmatively shows that Appellant was not informed, prior to entering his plea, that both knowledge and conscious disregard of the risk that his actions would lead to a certain result are essential elements of the offense of reckless aggravated assault. Under these circumstances, we find the reasoning of *Henderson* to be persuasive. Here, Appellant specifically denied having the requisite mental culpability at the time he committed the alleged offense and testified that he would not have pled guilty had he been properly informed that such mental culpability was an essential element of the offense. Consequently, we cannot conclude that Appellant's plea was voluntarily and knowingly entered.

Moreover, we note that the trial court apprised Appellant, prior to accepting his plea, that he was charged with the offense of "reckless aggravated assault." We do not presume, however, that a defendant understood the meaning of a legally-defined term simply because the term was read to him. Additionally, we conclude that failure to adequately inform Appellant of the nature of the charge against him was sufficiently critical to Appellant's decision to plead guilty as to cast doubt on the validity of the plea.[56] Appellant was deprived of his right to have a jury hear and determine the issue of whether he acted recklessly, as charged in the indictment.[57]

Because Appellant's plea of guilty to the charge of aggravated assault was not voluntarily made, the trial court abused its discretion in denying Appellant's motion for new trial on that basis. We, therefore, sustain Appellant's first issue on remand.

## SUA SPONTE WITHDRAWAL OF GUILTY PLEA

In his second issue on remand, Appellant contends that the trial court abused its discretion in denying his motion for new trial because, despite his guilty plea, the evidence presented at trial fairly raised an issue regarding Appellant's innocence as to count one of the indictment,

**55.** *See Aliff v. State*, 627 S.W.2d 166, 172 (Tex.Crim.App.1982); *Cooks v. State*, 5 S.W.3d 292, 296 (Tex. App.-Houston [14th Dist.] 1999, no pet.); *Trepanier v. State*, 940 S.W.2d 827, 830–31 (Tex.App.-Austin 1997, pet. ref'd).

**56.** *See Ex parte Moody*, 991 S.W.2d 856, 858 (Tex.Crim.App.1999).

**57.** *See Booth v. State*, 725 S.W.2d 521, 523 (Tex.App.-Tyler 1987, pet. ref'd).

and therefore, the trial court should have sua sponte withdrawn Appellant's plea of guilty to the aggravated assault charge. The record reflects that the trial court accepted Appellant's plea of guilty and instructed the jury to find him guilty as charged in the indictment of the offense of reckless aggravated assault causing serious bodily injury and to assess his punishment within the range provided by law.

■ The rule is well established in this state that in any case where evidence is introduced that reasonably and fairly raises an issue as to the innocence of the accused and such evidence is not withdrawn, the defendant's guilty plea must be withdrawn and a plea of not guilty must be sua sponte entered by the trial court.[58] The rule applies even though the defendant makes no effort during the trial to withdraw his plea of guilty, makes no objection to the court's charge instructing the jury to render a verdict of guilty, and even though the defendant's testimony shows him to be guilty of the offense.[59]

■ In order to trigger the trial court's duty to sua sponte withdraw a guilty plea, the evidence must do more than merely tend to raise a defensive issue.[60] Rather, it must "reasonably and fairly raise the issue."[61] The purpose of the rule is to ensure that guilty pleas are knowingly and voluntarily entered.[62] Appropriately, the trial court has the sound discretion to make that determination.[63] Accordingly, whether the issue of Appellant's innocence was reasonably and fairly raised at his trial requires us to consider whether the trial court abused its discretion.[64] "[E]ach case must be evaluated in light of its unique circumstances and the offense charged."[65]

Appellant directs us to the following portion of his testimony at the punishment phase of the trial:

Q. [State] As far as the accident itself, do you remember running the red light?

A. No, I do not remember running a red light.

Q. Did you see it at all?

A. I did not see a red light.

Appellant points to this testimony as well as evidence that he was legally intoxicated at the time of the accident as raising the issue of his innocence by showing that he was not actually aware that his conduct created a substantial risk of serious bodily injury to another. Specifically, Appellant argues:

Appellant's testimony that he did not see the red light, corroborated by proof that he had apparently lost the normal use of his mental faculties, clearly established his guilt of Intoxication Assault, under Count Three of the indictment. That same evidence, however, also fairly and reasonably negated "recklessly failing to stop at a red light" the culpable mental state and conduct alleged in Count One.

58. *Griffin v. State*, 703 S.W.2d 193, 195 (Tex. Crim.App.1986).

59. *Montalvo v. State*, 572 S.W.2d 714, 715–16 (Tex.Crim.App. [Panel Op.] 1978); *Steele v. State*, 22 S.W.3d 550, 553 (Tex.App.-Fort Worth 2000, pet. ref'd).

60. *Griffin*, 703 S.W.2d at 196.

61. *Id.*

62. *Id.*

63. *Id.* at 197.

64. *Id.*

65. *Id.* at 196.

As Appellant points out, it has been observed that "[i]t is precisely because intoxicated persons may be less than conscious that we do not require that they consciously accept the risk of their conduct to find them accountable therefor." [66]

■ We conclude that Appellant's trial testimony not only supports the evidence of the involuntariness of his plea offered in his motion for new trial, but it also reasonably and fairly raised an issue as to his innocence of the charge of reckless aggravated assault as alleged in the indictment. Accordingly, the trial court abused its discretion in failing to sua sponte withdraw Appellant's guilty plea and enter a plea of not guilty on his behalf when evidence of Appellant's innocence was fairly raised. The trial court, therefore, erred in denying Appellant's motion for new trial on this basis. We sustain Appellant's second issue on remand.

### CONCLUSION

We affirm Appellant's conviction under count three of the indictment, violation of section 49.07 of the penal code. We reverse the trial court's judgment as to count one of the indictment, violation of section 22.02(a)(1) of the penal code, set aside Appellant's plea of guilty, and remand this cause for a new trial.

66. *Ormsby,* 600 S.W.2d at 786 (Douglas, J. dissenting).