In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00160-CR


______________________________




JAMSEY BELLE, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 114th Judicial District Court


Smith County, Texas


Trial Court No. 114-2746-06




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Jamsey Belle appeals his conviction by a jury of possession of a controlled substance
(cocaine) in an amount of less than one gram. Belle pled "true" to the enhancement paragraph, and
the jury assessed his punishment at ten years' imprisonment.

 In his sole point of error on appeal, Belle contends the trial court erred by admitting evidence
that he had failed to appear for a previous trial and that the error was of such magnitude as to justify
reversal. We disagree and affirm.

 The record shows that the case was originally called for trial on February 26, 2007. Belle did
not appear. Before the next trial setting of September 5, 2007, the State filed a notice of intent to
offer evidence, stating that it intended, among other things, to offer evidence of Belle's failure to
appear for trial "on or about February 27, 2007." 

 When the State indicated that it planned to offer evidence about that matter, counsel objected
on the basis that the evidence was more prejudicial than probative. The court overruled the objection
and allowed Belle a running objection to the evidence. The State introduced evidence through
Officer Bart Lemons that Belle had failed to appear at the trial and that Lemons had arrested him for
a bond forfeiture.

 The question before us is whether the evidence was inadmissible because it is evidence of
such a nature that its probative value was substantially outweighed by the danger of unfair prejudice. 
See Tex. R. Evid. 403.

 A trial court, when undertaking a Rule 403 analysis, must balance (1) the inherent probative
force of the proffered item of evidence along with (2) the proponent's need for that evidence against
(3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the
evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be
given undue weight by a jury that has not been equipped to evaluate the probative force of the
evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount
of time or merely repeat evidence already admitted. Gigliobianco v. State, 210 S.W.3d 637, 641-42
(Tex. Crim. App. 2006); see Casey v. State, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007) (should
determine if probative value substantially outweighed by one of the countervailing considerations
listed in the rule). The trial court's determination under the Rule 403 balancing test is only reversed
for abuse of discretion. Mozon v. State, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999).

 Belle argues that the trial court erred in admitting the evidence because its negligible
probative value as to the crime at bar was clearly outweighed by its prejudicial effect. He supports
this argument by pointing to the jury's focus on this specific evidence, as shown by jury notes sent
out during deliberations, and the State's emphasis on the evidence, arguing that this shows the jury's
decision was made on an improper basis. He also suggests that the evidence is at most only
marginally probative as to the actual crime at bar, and thus the court abused its discretion by
choosing to admit the evidence.

 There is substantial authority holding that an accused person's conduct after the crime,
including failure to appear at a trial setting, can indicate a consciousness of guilt--and is admissible
as evidence tending to prove commission of the crime. Hyde v. State, 846 S.W.2d 503, 505 (Tex.
App.--Corpus Christi 1993, pet. ref'd) (citing Aguilar v. State, 444 S.W.2d 935, 938 (Tex. Crim.
App. 1969)). 

 Unfair prejudice does not refer to an adverse or detrimental effect of evidence, but instead
to an undue tendency to suggest a decision made on an improper basis, commonly an emotional one. 
See Gigliobianco, 210 S.W.3d at 641. Obviously, it does not arise from the mere fact that evidence
injures a party's case--the purpose of evidence offered by a party is to be prejudicial to his or her
opponent's case. Casey, 215 S.W.3d at 883. 

 Evidence is unfairly prejudicial only when it tends to have an adverse effect beyond tending
to prove the fact or issue that justifies its admission as evidence. Id. As most recently explained by
the Texas Court of Criminal Appeals, the question is whether the evidence is of such a nature as to
suggest that the jury's decision would be made based on an improper basis upon its admission. 
Gigliobianco, 210 S.W.3d at 641.

 The probative value of this evidence is that it shows a form of flight, which in turn may be
construed as consciousness of guilt. Hyde, 846 S.W.2d at 505. While this evidence is not essential,
it serves to assist in convincing a jury of the defendant's guilt. Since the rationale for this type
evidence has been sanctioned by the courts, we find it does not suggest that a decision should be
made on an improper basis or confuse or distract the jury. There is no reason to conclude this jury
was not equipped to properly weigh this evidence. The presentation of the evidence did not consume
an inordinate amount of time or repeat previously admitted evidence. 

 A trial court's decision in balancing these factors is reviewed under the abuse of discretion
standard and is disturbed on appeal only when the trial court's decision falls outside the zone of
reasonable disagreement. Casey, 215 S.W.3d at 879 (citing Montgomery v. State, 810 S.W.2d 372,
391-92 (Tex. Crim. App. 1990) (op. on reh'g)). 

 We conclude, based on the factors set out above, that the decision of the trial court to admit
the evidence was within the zone of reasonable disagreement, and thus was within the discretionary
authority of the court. The contention of error is overruled.

 We affirm the judgment.



 Jack Carter

 Justice


Date Submitted: May 27, 2008

Date Decided: May 29, 2008


Do Not Publish




t 2"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00049-CR

                                                ______________________________

 

 

                                  AARON WILLIAM HART,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 6th Judicial District Court

                                                             Lamar County, Texas

                                                            Trial
Court No. 22924

 

                                                            
                                      

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                        Opinion by Justice Moseley








                                                                   O P I N I O N

 

            Aaron
William Hart, a ninteen-year-old male, who, by reason of moderate mental
retardation, has a full scale intelligence quotient of between forty-seven and fifty-two
and the mental age of approximately an average six year old, was earning money
in November 2008 by mowing the lawn of Sabrina Albertson, a neighbor.  

            Albertson
noticed that Hart had ceased mowing and also noticed the absence of T.P., her
six-year-old stepson, and went into the yard to locate T.P.  Albertson followed the voices of Hart and
T.P. to a shed, where she witnessed Hart sitting directly beside her stepson on
the ground with legs out in front of him, trying to hurry and pull his pants
up.  Hart told Albertson that T.P. had
gotten mad at him and pulled his pants down. 


            Albertson
led T.P. into her house and closed the sliding glass door behind her.  An uninvited Hart traipsed into the kitchen
to ask if T.P.s father was going to be mad at him and inquired if he was in
trouble.  Albertson instructed Hart to
take his lawnmower and go home.  Hart
walked outside, paused, came back in, and asked if he could finish mowing the
yard.  Upon receiving a negative
response, he gathered his mower and left. 


            T.P.
told Albertson that Hart pulled my pants down, touched his wee-wee, tried
to put it in my butt, and made T.P. touch his wee-wee to Harts wee-wee.  Albertson called the police.  

            To
Albertsons surprise, Hart returned and resumed mowing the yard.  After he was once again asked to leave, he
compliedpermanently this timeand walked away.  Officer Davis Rowton found Hart walking down
the street and placed him under arrest.   


            On
the advice of court-appointed counsel, Hart entered a plea of guilty to the
three counts of sexual assault of a child and two counts of indecency with a
child contained in the indictment against him. 
Hart then tried the issue of punishment to a jury, which assessed him
with a penalty of thirty years imprisonment on each of the three sexual
assault counts and five years imprisonment on each of the two indecency with a
child counts.  Although no such request
was made by the State, the trial court sentenced Hart to serve the five
penalties consecutively (a cumulative sentence of 100 years imprisonment). 

            Hart
has appealed.  In Harts brief and in
briefs presented by multiple amici curiae,
a number of issues have been raised. 

            Hart
argues that counsel failed to conduct an adequate investigation into the issue
of whether his guilty plea was voluntary. 
Specifically, Hart claims he received ineffective assistance of counsel
when he entered an unintelligent plea of guilt based upon counsels erroneous
advice that community supervision was a viable option in his case.  We agree with Hart and reverse and
remand.  

            Hart
also alleges counsel was ineffective because he failed to:  (1) investigate whether his mental retardation
prevented the entry of a knowing and intelligent guilty plea; (2) consider the
effect of Harts diminished capacity as a defense in developing his trial
strategy; (3) seek a mental health expert to assist him in determining whether
Hart was competent to stand trial; (4) present mitigating evidence of his
mental retardation to the jury during punishment; and (5) challenge
admissibility of Harts confession to the police.  Hart additionally contends that the trial
court erred in overruling his motion for new trial and abused its discretion in
issuing allegedly untimely findings of fact and conclusions of law.  Finally, Hart complains that a 100-year
sentence for a mentally retarded defendant constitutes cruel and unusual
punishment prohibited by the Eighth Amendment to the United States
Constitution.  The issue of ineffective
assistance regarding erroneous advice that Hart was eligible for community
supervision is dispositive of this case. 
Therefore, we do not decide Harts remaining points of error.  

I.          Standard of Review for
Ineffective Assistance of Counsel 

            Hart
was entitled to effective assistance of counsel during the plea bargaining
process.  Ex parte Battle, 817 S.W.2d 81, 83 (Tex. Crim. App. 1991) (en
banc).  No plea of guilty or plea of
nolo contendere shall be accepted by the court unless it appears that the
defendant is mentally competent and the plea is free and voluntary.  Tex.
Code Crim. Proc. Ann. art. 26.13(b) (Vernon Supp. 2009).  A plea of guilty is not knowingly and voluntarily
entered if it is made as a result of ineffective assistance of counsel.[1]  Ex
parte Burns, 601 S.W.2d 370, 372 (Tex. Crim. App. 1980); Ex parte Karlson, 282 S.W.3d 118, 129
(Tex. App.Fort Worth 2009, pet. refd). 
The constitutional validity of a guilty plea made upon the advice of
counsel depends on whether counsels performance was reasonably competent,
rendering a defendant effective representation during the particular
proceedings.  Battle, 817 S.W.2d at 83.  

            As
many cases have noted, the right to counsel does not mean the right to
errorless counsel.  Robertson v. State, 187 S.W.3d 475, 483 (Tex. Crim. App.
2006).  In order to prevail on a claim of
ineffective assistance of counsel, the defendant must satisfy the two-pronged
test set forth in Strickland v.
Washington.  466 U.S. 668, 68788
(1984); see also Ex parte Imoudu, 284 S.W.3d 866, 869 (Tex. Crim. App. 2009).  The United States Supreme Court and the Texas
Court of Criminal Appeals have held that the Strickland test applies to challenges to guilty pleas based on
ineffective assistance of counsel.  Hill v. Lockhart, 474 U.S. 52, 5859
(1985); see also Imoudu, 284 S.W.3d
at 869; Battle, 817 S.W.2d at 84. 

            The
first prong requires a showing that (1) counsels performance fell below an
objective standard of reasonableness.  Strickland, 466 U.S. at 687.  This requirement can be difficult to meet
since there is a strong presumption that counsels conduct falls within the
wide range of reasonable professional assistance.  Id.
at 689.  Those strategic choices made after thorough investigation of law and facts
relevant to plausible options are virtually unchallengeable.  Wiggins v. Smith, 539 U.S. 510, 52122
(2003) (quoting Strickland, 466 U.S. at 69091).  

            The
second Strickland prejudice prong
requires a showing that but for counsels unprofessional error, there is a
reasonable probability that the result of the proceeding would have been
different.  Strickland, 466 U.S. at 68788; Imoudu,
284 S.W.3d at 869.  A defendant
challenging a guilty plea satisfies the prejudice requirement of Strickland by showing a reasonable
probability that absent counsels deficient performance, he would not have
pleaded guilty and would have insisted on going to trial.  Hill,
474 U.S. at 59.  Reasonable probability
means a probability sufficient to undermine confidence in the outcome.  Strickland,
466 U.S. at 694.  Stricklands second prong carries a lower
burden of proof than the preponderance of the evidence standard.  See
Bouchillon v. Collins, 907 F.2d 589, 595 (5th Cir. 1990); Strickland, 466 U.S. at 694.  An
appellant need not show that counsels deficient performance more likely than
not altered the outcome of the case.  Milburn v. State, 15 S.W.3d 267, 269
(Tex. App.Houston [14th Dist.] 2000, pet. refd).  

            A
failure to make a showing under either prong defeats a claim for ineffective
assistance.  Rylander v. State, 101 S.W.3d 107, 11011 (Tex. Crim. App.
2003).  Allegations of ineffectiveness
must be firmly founded in the record.  Bone v. State, 77 S.W.3d 828, 835 (Tex.
Crim. App. 2002).  The Strickland test of necessity requires a
case-by-case examination of the evidence. 
Williams v. Taylor, 529 U.S. 362,
391 (2000). 

II.        Harts Guilty Plea Was
Based on Counsels Advice that Hart Was Eligible to Receive             Community Supervision 

            

            When
Harts appointed counsel met with Hart, he believed Hart may not be competent
to answer to the States Indictment. 
According to counsel, Hart did not seem to understand the proceedings
or the allegations against him.  The
trial court granted a motion for psychiatric examination to be conducted by the
courts appointed expert Dr. David Bell. 


            Bell
conducted a competency evaluation[2]
concluding Hart has a factual and rational understanding of his charges, was
able to disclose facts, events, and states of mind, and could engage in a
reasoned choice of legal strategies and options.  Bell did not conduct tests on Hart but relied
on an interview and review of previous records.  The Bell report concluded in regard to Harts
condition that it diminishes it but does not prohibit Hart from engaging with
counsel in a reasonable and rational manner. 
During the evaluation, Hart stated he would like to get out of jail
and get probation.  Harts statement
was based upon advice from his counsel. 

            During
the motion for new trial, Harts counsel testified community supervision was a
viable option for Hart.  He claimed Hart told
me on several occasions, told [private investigator Jim] Chadwick, without me
present, on several occasions, he wanted to plead guilty and go to the Court
for punishment to get probation. 
Although counsel read the Bell report, he did not discuss it with Bell
and did not attempt to ascertain from Bell the degree which Harts condition
diminished his ability to rationally engage with his attorney.  Even though Harts counsel read the Bell
report, at the hearing during which Hart entered his guilty plea, he
mischaracterized Harts level of mental retardation as mild instead of the moderate
level as contained in the report and, after restating Bells conclusion that
Hart was competent to testify, the following plea exchange occurred:  

            THE
COURT:  All right.  Mr. Hart, in Counts One, Two and Three you are
charged with aggravated sexual assault of a child.  As to Count One, how do you wish to plead,
guilty or not guilty?

 

            [BY
HART]:  Not guilty. 

 

            THE
COURT:  Sir?

 

            [BY
HART]:  Say again. 

 

            THE
COURT:  Guilty or not guilty?

 

            [BY
HART]:  Not --

 

            [HARTS
COUNSEL]:  Pleading guilty.  Tell the Judge. 

 

            [BY
HART]:  Guilty.  

 

            THE
COURT:  Okay.  And as to Count Two, how do you wish to
plead?

 

            [BY
HART]:  Guilty.  Guilty. 

 

            When
asked why he pled guilty, Hart said his counsel told me to say that.  I did not want to say that, and the
attorney told me to tell the judge Id done it. 
The attorney told me Ill get probation or go to jail for a long time.[3]   

            During
punishment, counsel advised Hart to take the stand and again plead guilty in
front of the jury.  He believed that
once [Hart] testified, which he did, and did very well, I believe that -- I
thought that the jury would, at least, consider probation.  Hart testified:

I put his -- his privates in his mouth -- and he
put his dick -- and he got my dick in his mouth.  And did -- I done -- I do [sic] that.  And -- and other stuff.  And I -- he -- I went -- I went behind the
shed to use the bathroom.  He followed me
behind the shed and he put his pants down and he took -- and stuff.  So -- so I -- he said -- get his buckled . .
. . 

 

            .
. . .

 

He asked me to get his buckle.  Do his buckle.  And I done that.  He pulls his pants down.  Started pissing.  I tell him to leave but he didnt leave.

 

The following was also developed:

            Q.        Aaron, are you a little nervous?

 

            A.        [By Hart] Kind of. 

 

            Q.        Kind of nervous.  You testified earlier that you stuck your
private parts in his mouth?

 

            A.        Yes. 

 

            Q.        Why did you do that?

 

            A.        Because I had -- I was -- got -- I was
thinking about the voice in my head.  And
I was dizzy at that time . . . .

 

            .
. . .

 

            Q.        Do you know that it was wrong to do what
you did with [T.P.]?

 

            A.        Yes, I know it was wrong.  And I think that too.  I dont mean to . . . . 

 

            .
. . .

 

            A.        And -- and I know it was wrong but -- I
know I do it, but I didnt mean to do it in the first place -- inside my head
-- and some -- something come -- something popped in my head and telling me to
do that, do that.  But I -- I kind of
stopped it, but I didnt stop that time.

 

The State elicited:

            Q.        You do know the difference between right
and wrong, dont you?

 

            A.        No, I dont.

 

            .
. . .

 

            Q.        If you have sex with a little boy, thats
wrong? 

 

            A.        Yes.

 

            .
. . .

 

            Q.        And when you were doing this to [T.P.] you
were enjoying it, werent you?

 

            A.        No. 

 

            Q.        It didnt feel good?

 

            A.        No. 

            

            .
. . .

 

            Q.        Well, why did you ask him to do it if it
didnt feel good? . . . . [4]

 

            A.        I was -- I had something in my head and
stuff --

 

            Q.        Okay. 

 

            A.        -- and I
was dizzy. 

 

            Harts
father and sister took the witness stand during punishment and expressed their
belief that Hart should be placed on community supervision.  Other than Hart, these were the sole
witnesses called by the defense.  Harts
sister described him as slow, said he was in special classes, and told the
jury that Hart could accomplish simple tasks. 
Harts father also said Hart was in special education classes and was
described as MR.  Even though Harts
defense was relying on the hope of leniency based on his mental retardation, no
evidence was submitted to the jury that used the term mentally retarded or
any variation of that phrase.  Given the
speech impediment with which Hart is afflicted, it is impossible to determine
how much the fact that Harts testimony was disjointed was attributed by the
jury to his retarded condition and how much of it the jurors might have
determined was due to the speech impediment.  Despite this, without any further evidence or
testimony introduced to the jury, Harts counsel argued during closing argument
that Hart was obviously mentally retarded and asked the jury to award him
community supervision.[5]  

III.       Because Hart Was Not Eligible for
Community Supervision, Counsels Advice to       Plead
Guilty on that Basis Constituted Ineffective Assistance 

 

            Due process requires that each defendant who pleads
guilty does so with a full understanding of the charges against him and the
consequences of his plea.  Burke v. State, 80 S.W.3d 82, 93 (Tex.
App.Fort Worth 2002, no pet.) (citing
Basham v. State, 608 S.W.2d 677, 678
(Tex. Crim. App. [Panel Op.] 1980)). 
Thus, even assuming that the prosecutor had overwhelming evidence of
guilt, without adequate proof that a defendant in fact understood the charge,
the plea cannot be voluntary.  Henderson v. Morgan, 426 U.S. 637, 64445
(1976).  A guilty plea will not support a
conviction where motivated by significant misinformation conveyed by defense
counsel because it cannot be considered voluntarily and knowingly made.  Burke,
80 S.W.3d at 93 (citing Battle, 817
S.W.2d at 83; Ex parte Kelly, 676
S.W.2d 132, 13435 (Tex. Crim. App. 1984); Cardenas
v. State, 960 S.W.2d 941, 943 (Tex. App.Texarkana 1998, pet. refd)). 

            In addition to
the previous statements concerning Harts degree of mental acuity, it is
worthwhile to review some of the other evidence presented regarding this, both
during trial and in the motion for new trial. 
Hart has an extremely low range of functioning, including difficulty
remembering the year he was born.  Out of
four diagnostic tests, three of Harts scores place him at a mental functioning
of less than six years of age.  The
remaining test assesses his mental age at 6.2 years.  Additionally, he has a moderate to severe speech
impairment.  According to Harts father, 

[he] cant count money, does not know his right
shoe from his left shoe, cant run bath water for himself, cant shave, cant
cook, has poor verbal communication, cant read or write, cant clean a room,
likes toys designed for 5 to 6 year old children, and loves cartoons.  

 

            .
. . .

 

He began carrying a string in his pocket at age 8,
and he talked to the string every day and night, and he to the present talks to
a piece of string.  He could never
explain what a television show was about. 
He would mix up the days of the week. 


 

            However, the degree of
mental retardation from which Hart suffers is less determinative here than the
cogent fact that he was provided patently incorrect information upon which he
relied in entering a guilty plea.  Even a
person of genius status requires somewhat correct data in order to make an
informed decision. 

            A defendant is not
eligible for community supervision recommended by a jury if the defendant . .
. is convicted of an offense listed in Section 3g(a)(1)(C), (E), or (H), if the
victim of the offense was younger than 14 years of age at the time the offense
was committed.  Tex. Code Crim. Proc. Ann. art. 42.12, § 4(d)(5) (Vernon Supp. 2009).[6]
 These sections prohibit imposition of
community supervision for convictions of indecency with a child and sexual
assault.  Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(1)(C), (H) (Vernon Supp. 2009).  Hart pled and was found guilty of sexual
assault and indecency with a child.  
Therefore, he was never eligible for community supervision upon
conviction of these charges.  

            Here,
the record is clear that Hart pled guilty while fully believing his counsels
advice that he was eligible to receive community supervision.  In Battle,
the Texas Court of Criminal Appeals found the defendants guilty plea involuntary
where it was based on counsels advice that the defendant was eligible for
community supervision when, in fact, he was not.  817 S.W.2d at 83; see Cardenas, 960 S.W.2d at 94647 (finding counsel ineffective
based on erroneous advice that defendant could receive community
supervision).  Further, the court concluded that counsels performance was deficient and that his
deficient performance prejudiced the defense. 
Battle, 817 S.W.2d at 84; see Ex parte Briggs, 187 S.W.3d 458, 469
n.34 (Tex. Crim. App. 2005).  As in Battle and Cardenas, we conclude that counsels failure to consult the Texas
Code of Criminal Procedure while advising Hart to plead guilty without the
benefit of a plea bargain based on an erroneous belief that he was entitled to
community supervision fell below an objective standard of reasonableness.  Further, we conclude that Harts statements
that his counsel told me to [plead guilty]. 
I did not want to say that, and [t]he attorney told me Ill get
probation or go to jail for a long time satisfies the prejudice requirement of Strickland because it demonstrates,
with a probability sufficient to undermine confidence in the outcome that
absent counsels deficient performance, Hart would not have pled guilty.  See
Helton v. State, 909 S.W.2d 298, 299 (Tex. App.Beaumont 1995, pet. refd);
Matthews v. State, 830 S.W.2d 342, 345
(Tex. App.Houston [14th Dist.] 1992, no pet.).  

IV.       CONCLUSION

            We reverse the judgment and remand to
the trial court for proceedings consistent with this opinion.  

 

                                                                                    Bailey
C. Moseley

                                                                                    Justice

 

Date Submitted:          April
14, 2010

Date Decided:             April
30, 2010

 

Publish            











[1]Hart
also complains his counsels ineffectiveness, in failing to consider or
admonish Hart on the availability of the diminished capacity defense, led to an
involuntary guilty plea, a ground which we need not consider.  Texas
does not recognize diminished capacity as an affirmative defense.  Ruffin v. State, 270 S.W.3d 586, 593
(Tex. Crim. App. 2008); Jackson v. State, 160 S.W.3d 568, 573 (Tex.
Crim. App. 2005); see Rhoten v. State, 299 S.W.3d 349 (Tex.
App.Texarkana 2009, no pet.).  Rather,
it is a failure-of-proof defense in which the defendant claims that the State
failed to prove that the defendant had the required state of mind at the time
of the offense.  Jackson, 160
S.W.3d at 57374. 

 





[2]The test of incompetency is whether a
defendant has sufficient present ability to consult with his lawyer with a
reasonable degree of rational understandingand whether he has a rational as
well as factual understanding of the proceedings against him.  Dusky v. United States, 362 U.S. 402,
402 (1960); Tex. Code Crim. Proc.
Ann. art. 46B.003(a) (Vernon 2006). 
When asked to evaluate the effect of Harts mental retardation on the
capacity to engage with counsel in a reasonable and rational manner, Bell wrote
it diminishes it but does not prohibit it. 
Without further explanation of this finding, Bell concluded Hart was
competent to testify.  





[3]Dr.
Vincent Ramos evaluated Hart for competency to stand trial.  He stated in his report attached to the
motion for new trial that Harts motivation for pleading guilty could have
been his belief it would result in an immediate reward, such as going home and
probation.  In an audio recorded confession
to the police, Hart shared details of the incident with T.P., and then asked
officers if he could go home and collect the money owed to him for mowing the
yard. 





[4]Hart
later contradicted his testimony by stating the actions with T.P. felt
good.  





[5]During
the hearing on Harts motion for new trial, Harts teacher for four years and
his high school principal testified about the degree of his mental
retardation.  They both explained that
Hart had difficulty understanding abstract terminology and the severity of the
wrong committed with T.P.  Ramos
testified Hart did not understand the terms guilty or appeal during his
evaluation.  Hart had a constitutionally
protected right to provide the jury with mitigating evidence that his trial
counsel either failed to discover or failed to offer.  Williams
v. Taylor, 529 U.S. at  393; see Freeman v. State, 167 S.W.3d 114,
11718 (Tex. App.Waco 2005, no pet.) (finding mothers lay testimony
regarding defendants mental health, coupled with counsels failure to
investigate, led to lack of mitigation evidence in form of Freemans mental
health history which clearly would have been admissible).  He argues that counsel was ineffective for
failing to introduce evidence of his mental retardation in front of the jury
during punishment.  Even though it is
sheer speculation that evidence of his mental retardation would have in fact
favorably influenced the jurys assessment of punishment, Harts jury could
have possibly been influenced by it.  Freeman, 167 S.W.3d at 121.  





[6]See Act of May 18, 2007, 80th Leg., R.S., ch.
593, §§ 1.06, 4.01(a), 2007 Tex. Gen. Laws 1120, 1123, 1148 (making change in
law effective for offenses committed on or after September 1, 2007).