# NO. 12-09-00134-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *LINDA ZORN,*<br>*APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *OPINION*

Linda Zorn appeals her conviction for manslaughter. In five issues, Appellant argues that the evidence is legally and factually insufficient to support the verdict and that the trial court erred by allowing the State to offer certain evidence and by excluding certain testimony offered by the defense. We affirm.

### BACKGROUND

On the evening of June 27, 2008, Appellant struck a pedestrian, J. B. Nowell, with her car as she drove through the Hide-A-Way Lake community outside Lindale, Texas. The collision occurred on a narrow roadway on a downhill curve. Nowell died from his injuries. Appellant was found a short distance away, her car crashed into a stand of small trees. She was disoriented and uncooperative with the police. A subsequent evaluation of her blood indicated that she had a blood alcohol concentration of 0.20 grams of alcohol per 100 milliliters of blood or two and one half times the legal limit for operating a motor vehicle.[1]

A Smith County grand jury indicted Appellant for the felony offense of manslaughter. Appellant pleaded not guilty, and a jury trial was held. The jury found Appellant guilty as

---

[1] *See* TEX. PENAL CODE ANN. § 49.01(2)(B) (Vernon 2003).

charged.  Following a trial on punishment, the jury assessed punishment at imprisonment for twenty years and a fine of $10,000.  This appeal followed.

**SUFFICIENCY OF THE EVIDENCE**

In her first, second, and third issues, Appellant argues that the evidence is legally and factually insufficient to support the verdict.  Specifically, she argues that the trial court erred in overruling her motion for a directed verdict and that there is insufficient evidence to establish that she acted with criminal recklessness.

**Applicable Law**

The due process guarantee of the Fourteenth Amendment requires that a conviction be supported by legally sufficient evidence.  *See Jackson v. Virginia*, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Willis v. State*, 192 S.W.3d 585, 592 (Tex. App.–Tyler 2006, pet. ref'd).  Evidence is not legally sufficient if, when viewing the evidence in a light most favorable to the verdict, no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also Rollerson v. State*, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007).  A challenge to a trial court's denial of a motion for directed verdict is a challenge to the legal sufficiency of the verdict.  *See Canales v. State*, 98 S.W.3d 690, 693 (Tex. Crim. App. 2003).

While legal sufficiency review is all that is required by the U.S. Constitution, the Texas Court of Criminal Appeals has determined that the Texas Constitution requires further review of the factual sufficiency of the evidence.  *Clewis v. State*, 922 S.W.2d 126, 129-30 (Tex. Crim. App. 1996).  Factual sufficiency review differs from legal sufficiency review only slightly.  *See Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006).  In a factual sufficiency review, we review the evidence without the light most favorable to the verdict and we are authorized, "albeit to a very limited degree," to disagree with the jury's resolution of contested factual issues.  *See id.*; *Watson v. State*, 204 S.W.3d 404, 414, 417 (Tex. Crim. App. 2006).  In a review of the factual sufficiency of the evidence, we will conclude that the evidence is insufficient only if the great weight and preponderance of the evidence contradicts the jury's verdict or the verdict is clearly wrong and manifestly unjust.  *See Rollerson*, 227 S.W.3d at 724; *Watson*, 204 S.W.3d

2

at 417.

Under either standard, our role is that of appellate review, and the fact finder is the principal judge of the weight and credibility of a witness's testimony. *Wesbrook v. State*, 29 S.W.3d 103, 111–12 (Tex. Crim. App. 2000). The fact finder may choose to believe all, some, or none of a witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id*.

A person commits manslaughter if she recklessly causes the death of an individual. TEX. PENAL CODE ANN. § 19.04(a) (Vernon 2003). A person acts recklessly with respect to circumstances surrounding her conduct or the result of her conduct when she is aware of, but consciously disregards, a substantial and unjustifiable risk that the circumstances exist or the result will occur. *Id*. § 6.03(c) (Vernon 2003). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all circumstances as viewed from the actor's standpoint. *Id*.; *Garza v. State*, 50 S.W.3d 559, 564 (Tex. App.–Houston [1st Dist.] 2001, no pet.). "At the heart of reckless conduct is conscious disregard of the risk created by the actor's conduct." *Lewis v. State*, 529 S.W.2d 550, 553 (Tex. Crim. App. 1975). Recklessness can be applied generally to the act of driving. *See Porter v. State*, 969 S.W.2d 60, 63 (Tex. App.–Austin 1998, pet. ref'd).

In this case, the State was required to prove that Appellant recklessly caused the death of J. B. Nowell by operating a vehicle into Nowell while intoxicated. *See* TEX. PENAL CODE ANN. § 19.04.

**Analysis**

When evaluating whether conduct is reckless, a finder of fact and a reviewing court must examine (1) whether the act, when viewed objectively at the time of its commission, created a "substantial and unjustifiable" risk of the type of harm that occurred, (2) whether that risk was of such a magnitude that disregard of it constituted a gross deviation from the standard of care that

3

a reasonable person would have exercised in the same situation, (3) whether the defendant was consciously aware of that risk, and (4) whether the defendant consciously disregarded that risk. *See Williams v. State*, 235 S.W.3d 742, 755–56 (Tex. Crim. App. 2007).

At trial and on appeal, the State argues that Appellant was reckless in the operation of her vehicle because she drove at a speed that was inappropriate for the setting and because she drove while intoxicated. Appellant does not argue that the speed of her driving cannot support the verdict. Instead, she argues that there was no competent evidence as to her speed at the time of the wreck.

Appellant does not directly address the two issues raised specifically by the indictment, namely that striking Nowell with a vehicle, and doing so while intoxicated, created an unacceptable risk of his death. Instead, she argues that the evidence showed only that she was operating a vehicle in a twenty-five miles an hour zone and that her car collided with Nowell. She argues that there is no evidence of excessive speed or other act which, under the standard articulated in *Williams*, shows that she created and then disregarded a substantial and unjustifiable risk. We disagree.

Viewing the evidence in a light most favorable to the verdict, there is evidence from several eyewitnesses that Appellant was travelling at a rate of speed that was unsafe for the circumstances. Denver Gentry, a security officer with the Hide-A-Way community, testified that the roads within the community were not "built for speed." Kim Dockery, a resident, testified that the roadway where Appellant struck Nowell was a curvy hill that required a motorist to slow down. Pat Kesey, Kristine Kubin, and Emilee Alcock testified that they saw Appellant's vehicle before the wreck travelling at what appeared to be high rate of speed for the area. Two witnesses testified that it was common for pedestrians to be present on the streets in the community in the evening hours.

There was a dispute about the speed at which Appellant was travelling. Appellant did not testify, but she called an expert witness who testified that she had to have been travelling at a rate below the speed limit because, in his opinion, she would not have been able to control the vehicle through the turn if she had exceeded the speed limit. Although the State did not offer the testimony of a witness who had done a formal reconstruction of the wreck, several police officers offered opinions that Appellant was travelling too fast for the roadway.

4

Additionally, there is the issue of Appellant's intoxication.[2] The court of criminal appeals has held that intoxication is recklessness per se. *See **Ormsby v. State**,* 600 S.W.2d 782, 783–84 (Tex. Crim. App. 1979). That holding no longer controls because it was based on the legislature's grouping the offense of intoxication manslaughter with the offense of involuntary manslaughter. *See **Burke v. State***, 80 S.W.3d 82, 90–91 (Tex. App.–Fort Worth 2002, no pet.) (op. on reh'g). The legislature separated those offenses in 1994. ***Id***. But that does not mean that the act of driving while intoxicated could not, in this case, be reckless conduct by Appellant. And, there was ample evidence that Appellant was intoxicated, including a high blood alcohol concentration as well as her disorientation and demeanor following the wreck.[3]

When viewed in a light most favorable to the evidence, we hold that a rational jury could conclude that based either on the speed at which Appellant drove her vehicle or on her level of intoxication that Appellant was aware of, but consciously disregarded, a substantial and unjustifiable risk that a pedestrian would be struck by her vehicle. Appellant was intoxicated and driving too fast on narrow roads clustered with pedestrians in her own neighborhood. The jury's conclusion that she was reckless is reasonable. Accordingly, we overrule Appellant's first and second issues.

We reach the same conclusion with respect to the factual sufficiency of the evidence. As we will discuss in a following section, some of the testimony about the speed of Appellant's vehicle is problematic. But the problem presented is the specific estimate of speed by lay, and youthful, witnesses. Several lay witnesses testified, without objection, that Appellant was travelling at too high a rate of speed. For example, one witness testified that when the car passed it looked like a bullet or a "big blur." Others testified that she was travelling too fast or that the resultant impact was powerful.

Appellant does not contest the evidence that shows she was intoxicated. There was some dispute as to whether Nowell was in the roadway when he was struck. Appellant's expert

---

[2] There is no impediment to charging Appellant with manslaughter even if intoxication manslaughter had also been available as a potential charge. *See **Burke v. State***, 28 S.W.3d 545, 549 (Tex. Crim. App. 2000); *see also **Lomax v. State***, 233 S.W.3d 302, 312 n. 32 (Tex. Crim. App. 2007).

[3] The Texas Penal Code defines "intoxicated" as either (1) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or (2) having an alcohol concentration of 0.08 or more. TEX. PENAL CODE ANN. § 49.01(2)(A), (B) (Vernon 2003).

witness testified that, in his opinion, it was "more likely than not [that] the pedestrian would have been either in the street completely or kind of on and off the street." A State's witness testified that the area of impact was "well off the roadway," although he conceded that he had not done a formal reconstruction of the wreck and that it was difficult to pinpoint the exact location of the impact because of the way Appellant's vehicle struck Nowell.

In sum, viewing the evidence in a neutral light, a rational finder of fact could have concluded that Appellant was travelling too fast for the conditions and the roadway, failed to keep an adequate lookout, and was intoxicated. In such a situation, the jury's conclusion that Appellant was reckless is not against the weight and preponderance of the evidence, is not clearly wrong, and does not represent a manifest injustice. We overrule Appellant's third issue.

### EXCLUSION OF TESTIMONY

In her fourth issue, Appellant argues that the trial court erred in excluding the testimony of a witness who would have testified that Appellant suffered from various mental illnesses and took medicine for anxiety. Appellant argues that the trial court ruling violated her right to present a defense.

### Background and Procedural History

Appellant proposed to call Jean Davenport to testify about her interactions with Appellant in the days and years that preceded the wreck. Outside the presence of the jury, the State objected to Davenport's testimony based on counsel's preview of that evidence during her opening statement. In order to make a ruling, the trial court invited Appellant to present the proposed testimony outside the presence of the jury. Appellant did so.

The testimony proffered by Appellant showed that Jean Davenport is Appellant's friend. They are members of the same church. Appellant did not have any immediate family in the area, and Davenport and her husband, who is also Appellant's minister, became a surrogate family for her. For the nine years that preceded that trial, Davenport assisted Appellant with her daily responsibilities. Appellant had been discharged from the military and was disabled. Davenport testified at the offer of proof hearing that Appellant had been diagnosed with paranoid schizophrenia. She also had colon surgery, and Davenport helped Appellant deal with issues that arose between Appellant and the Veteran's Administration. She said that she had a power of

6

attorney for Appellant for "about eight years."

Davenport testified that Appellant was an alcoholic but that she had been sober for about a year before the wreck. She testified that she had Appellant involuntarily committed because she had been suicidal. She also testified that Appellant was under a great deal of stress at the time of the wreck because her house was being remodeled. Appellant could not stay at the house at the time of the remodeling. Davenport testified that Appellant could achieve balance when she was in familiar surroundings but that changes to her routine were very difficult for Appellant to manage.

The State objected to this evidence on the grounds that it was hearsay, that Davenport was not an expert witness and was not qualified to make a medical or psychiatric diagnosis, and that a witness could not testify about another person's mental state. Appellant's attorney responded that Davenport should be permitted to testify that Appellant does not have the "emotional responses or the judgment abilities" that others may have or possess. The trial court ruled that the testimony was inadmissible for the guilt/innocence phase of the trial.

**Standard of Review and Applicable Law**

Generally, we review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *See Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002); *see also Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1991) (op. on reh'g). We reverse only when the trial court's decision was so clearly wrong as to fall outside the zone of reasonable disagreement. *See Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). We uphold the trial court's ruling if it is reasonably supported by the record and correct under any theory of law applicable to the case. *See Willover*, 70 S.W.3d at 845.

If it is a defendant's evidence that is excluded, an error can be a violation of the defendant's constitutional right to compel the attendance of witnesses in his favor. *See Potier v. State*, 68 S.W.3d 657, 659 (Tex. Crim. App. 2002); *see also Washington v. Texas*, 388 U.S. 14, 18–19, 87 S. Ct. 1920, 1022–23, 18 L. Ed. 2d 1019 (1967) (Sixth Amendment insures compulsory process to obtain favorable witnesses). Evidentiary rulings rarely rise to the level of denying the fundamental constitutional rights to present a meaningful defense. *See Potier*, 68 S.W.3d at 663. There are two circumstances in which the improper exclusion of evidence may establish a constitutional violation: (1) when a state evidentiary rule categorically and arbitrarily

7

prohibits the defendant from offering relevant evidence that is vital to his defense; or (2) when a trial court erroneously excludes relevant evidence that is a vital portion of the case and the exclusion effectively precludes the defendant from presenting a defense. *Id*. at 659–62; *Wiley v. State*, 74 S.W.3d 399, 405 (Tex. Crim. App. 2002).

A nonexpert witness may offer opinion testimony or testimony about inferences made, but such testimony is limited to opinions or inferences that are rationally based on the perception of the witness and are helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. *See* TEX. R. EVID. 701. Hearsay is a statement not made at trial that is offered in evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Unless it meets an exception, hearsay is not admissible. TEX. R. EVID. 802.

## Analysis

Appellant argues that she was denied her ability to present evidence that "if believed, squarely brought Appellant's mental status" into question and raised the issue of "whether she was capable of being reckless as that term is defined in Texas under [the facts of the case.]" By excluding Davenport's testimony, Appellant argues that the jury "was left without vital information as to Appellant's ability to be reckless," specifically whether she was able to appreciate and then consciously disregard a substantial and unjustifiable risk.

Appellant does not cite any authority in support of her argument for admissibility of this specific kind of evidence. We agree with the State that some of this evidence is inadmissible hearsay. For example, Appellant's diagnosis by a medical doctor is an out of court statement that Appellant proposed that Davenport repeat in court for the truth of the matter asserted. And Appellant did not present evidence that Appellant was unfamiliar with an automobile, or with the neighborhood, or other experience–based information relevant to the issue of whether she could appreciate and then disregard the risks involved in this case. Nor does Appellant argue that this evidence should be admissible to explain Appellant's awkward and inappropriate behavior following the wreck. In fact, Appellant's counsel told the court during the hearing that she did not contest that Appellant was intoxicated.

What remains of the evidence proffered by Appellant is testimony that she was paranoid, that she is "different" when she is out of her comfort zone, and that she had stress in her life at the time of the wreck. The court of criminal appeals has held, and the State forthrightly

8

acknowledges, that evidence about the mental state of a defendant can be admissible when it is relevant to the issue of *mens rea*. *See Ruffin v. State*, 270 S.W.3d 586, 597 (Tex. Crim. App. 2008). Texas does not recognize a diminished capacity defense, but, for lack of a better term, psychological evidence is admissible if it is relevant to the question of whether the defendant had the *mens rea* to commit the crime. *See Jackson v. State*, 160 S.W.3d 568, 573–74 (Tex. Crim. App. 2005). In the *Ruffin* decision, the court drew an analogy between a blind person and a person with a mental disease or defect. *Ruffin*, 270 S.W.3d at 593–94. The court reasoned that just as a blind person would be permitted to offer evidence that his blindness prevented him from understanding that a person he shot at was a police officer, so too could a person suffering from mental delusions offer evidence about those delusions if they prevented him from apprehending that the person he shot at was a police officer. *Id*. at 594.

In that case, the court held that the proffered testimony that the defendant, because of a mental disease and attendant delusions, believed he was shooting at someone other than police officers was "clearly relevant." *Id*. at 596. By contrast, this case turns, essentially, on whether Appellant understood and disregarded the risk she undertook in driving while intoxicated. The nonhearsay portion of Davenport's testimony allows the conclusion that Appellant was easily flustered, occasionally suicidal, and in a state of anxiety the day before the wreck.[4] Rule 701 does not prevent the admission of this kind of evidence because, as here, it is based on the witness's perception of Appellant.

Because the right to present a defense is a constitutional right, many jurists would allow this testimony, if only in an abundance of caution.[5] But as to the relevance of the evidence, we do not conclude that Davenport's testimony was directly germane to the question of whether Appellant understood the risk she created. Her testimony is not that Appellant suffered from a delusion that caused her to fail to apprehend that she was driving or intoxicated or to think that she was driving in a different locale. Nor did her testimony show or tend to show that Appellant could not understand the risks her actions created. In this way, this case is more like *Mays v.*

---

[4] Davenport was more specific when she testified during the punishment phase of the trial. She testified that Appellant drank that day because of the stress of having her home repainted and the concomitant disruption to the orderliness of her life.

[5] In *Ruffin*, the trial court allowed lay testimony but not expert testimony as to the defendant's delusional thinking at or near the time of the assault. *Ruffin*, 270 S.W.3d at 589, 597.

*State*, No. AP-75,924, 2010 Tex. Crim. App. LEXIS 480, at *28–29 (Tex. Crim. App. Apr. 28, 2010). In that case, the defendant's mental illness evidence explained why he acted—he was paranoid and thought the deputies had "mistreated" him—but did not touch on the *mens rea* element of the offense. *Id*. Similarly, in this case, Appellant's lowered ability to navigate stressful situations explains why she was drinking and why she was in a hurry, but does not serve to negate the *mens rea* or to show that she could not appreciate the risk that her conduct created. We overrule Appellant's fourth issue.

**OPINION TESTIMONY**

In her fifth issue, Appellant argues that the trial court erred in allowing six witnesses to testify as to the speed at which Appellant was travelling. The State does not argue that such evidence is proper, but instead argues that Appellant failed to preserve a complaint and that any error is harmless.

**Applicable Law**

As a prerequisite to presenting a complaint on appeal, there must be a contemporaneous objection in the trial court. TEX. R. APP. P. 33.1. Even the erroneous admission of evidence will not result in reversible error if the same evidence is admitted elsewhere in the trial without objection. *See Saldano v. State*, 232 S.W.3d 77, 102 (Tex. Crim. App. 2007); *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998).

**Analysis**

Several witnesses testified about having seen Appellant's vehicle travelling through the Hide-A-Way Lake community before the wreck. Several other witnesses testified as to their impressions based on having arrived at the scene following the wreck. Each witness offered some quantitative assessment of Appellant's rate of travel. We will discuss the testimony of each witness individually.

*Detective Goodman*

In a bench conference, Appellant's counsel stated that she objected to testimony from Detective Goodman that it was a "high–impact collision." That objection was overruled. The State then asked the detective, "[H]ow would you describe the impact?" Appellant did not object when he described the impact as "very forceful."

An objection lodged at a bench conference is sufficient to preserve a complaint. *See Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991). However, in this instance, it appears that the State was attempting to ask a more direct question and avoid Appellant's objection. On appeal, Appellant asserts that Goodman testified that it was a "high–speed impact." That was not his testimony. Goodman testified that it was a very forceful impact and later testified, without contemporaneous objection, that it was consistent with someone travelling faster than the speed limit. Because Appellant did not object to the testimony about the forcefulness of the impact, no complaint is preserved for appellate review. Assuming Appellant preserved a complaint as to Goodman's testimony that Appellant was exceeding the speed limit, such evidence is not reversible error in this case because Appellant did not object when other witnesses offered the same testimony. *See Leday*, 983 S.W.2d at 718.

*Emilee Alcock*

The State asked fourteen year old Emilee Alcock the following question, "About how fast would you estimate just approximately do you think [Appellant's vehicle] was going?" Appellant objected on the basis of Alcock's lack of qualifications to answer the question, pointing out that she was not old enough to have a driver's license. The court overruled the objection, and Alcock estimated that Appellant was travelling at thirty–five to forty miles an hour before the collision.

The State agrees that it was improper to allow Alcock to estimate the speed of Appellant's vehicle.[6] The State argues that Appellant waived this objection because she failed to object to other witnesses who testified as to their opinions about the speed of Appellant's vehicle. However, no other witness made a specific estimate about the speed of the vehicle. Several witnesses testified that Appellant was travelling over the speed limit. And others testified that Appellant was travelling too fast for the roadway. There was no objection to that testimony, so any error in admitting Alcock's statement that Appellant was travelling too fast is not reversible error. *See Leday*, 983 S.W.2d at 718.

Alcock's specific, numerical estimate of the speed of Appellant's vehicle was not duplicated by the other witnesses. Any qualifications the fourteen year old Alcock possessed to

---

[6] The relevant portion of the brief reads as follows: "Appellant then argues that Emilee Alcock was improperly allowed, over [Appellant's] objection, to estimate the speed of Appellant's vehicle. [] This is true."

11

make a specific estimate as to the speed of Appellant's vehicle were not presented by the State before it elicited that estimate from her. Nevertheless, we hold that this error is harmless. *See* TEX. R. APP. P. 44.2(b); ***Johnson v. State***, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). Alcock's specific estimate of the speed is not inconsistent with the testimony of other witnesses and may actually have served to damp down the jury's estimate of the speed the vehicle was travelling. *Cf. **Ochoa v. State***, 994 S.W.2d 283, 285 (Tex. App.–El Paso 1999, no pet.) (error in admitting radar evidence harmless because defendant did not object to officer's testimony that, in his opinion, appellant exceeded speed limit). Furthermore, it is unlikely that the jury was unreasonably swayed by the testimony of a fourteen year old as to the speed of a motor vehicle, especially in this instance where the State did not offer any foundation on which the jury could conclude that Alcock had any basis to make such an estimate. Accordingly, we hold that any error in the admission of Alcock's specific estimate of the speed of Appellant's vehicle did not have a substantial and injurious effect or influence in determining the jury's verdict. After examining the record as a whole, we have a fair assurance that any error did not influence the jury, or had but slight effect. *See **Morales v. State***, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000).

### *Kristin Kubin*

Kristin Kubin answered in the affirmative when asked, "And do you feel like that car was going faster than 25 miles an hour?" At the time of trial, Kubin was a young person not yet of legal driving age. Appellant did not object to this testimony and has not preserved a complaint about this testimony for appellate review. *See* TEX. R. APP. P. 33.1.

### *Pat Kesey*

Pat Kesey testified that Appellant's car was travelling "fast" and that it appeared to her to be a "red streak." She also answered in the affirmative when asked if Appellant was travelling "way too fast" for the road. Appellant did not object to this testimony and has not preserved a complaint about this testimony for appellate review. *See* TEX. R. APP. P. 33.1.

### *Denver Gentry*

Denver Gentry, a supervisor of patrol officers working within Hide-A-Way Lake, testified that in his estimation, Appellant was travelling over the speed limit at the time of the wreck. Appellant did not object to this testimony and has not preserved a complaint about this testimony for appellate review. *See* TEX. R. APP. P. 33.1.

12

*Aaron Goodwin*

Aaron Goodwin, a paramedic, testified that there was "a lot of speed involved" based on his assessment of the damage to the vehicles and the injuries. Appellant did not object to this testimony and has not preserved a complaint about this testimony for appellate review. *See* TEX. R. APP. P. 33.1.

*Detective Martin*

Detective Martin testified that he was not an accident reconstruction expert, but he described the accident as a "high–force impact." Appellant did not object to this testimony and has not preserved a complaint about this testimony for appellate review. *See* TEX. R. APP. P. 33.1.

## Conclusion

Appellant objected to Alcock's testimony in which she estimated the speed of Appellant's vehicle immediately before the wreck. Appellant did not object to several other witnesses who testified that Appellant was driving too fast or that the impact of the wreck was powerful. Those complaints, therefore, are not preserved for our review. To the extent that Alcock's testimony is the same as the testimony of the other witnesses admitted without objection, Appellant has not shown reversible error. Any error in the admission of a specific estimate of the speed of Appellant's vehicle is harmless. We overruled Appellant's fifth issue.

### DISPOSITION

Having overruled Appellant's five issues, we ***affirm*** the judgment of the trial court.

**SAM GRIFFITH**
Justice

Opinion delivered May 28, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

13