

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## NUMBER 13-15-00381-CR

**THE STATE OF TEXAS,**                                        **Appellant,**

**v.**

**TINA GAIL MAREK,**                                          **Appellee.**

## NUMBER 13-15-00383-CR

**TINA GAIL MAREK**                                          **Appellant,**

**v.**

**THE STATE OF TEXAS**                                       **Appellee.**

### On appeal from the 24th District Court
### of Victoria County, Texas.

## MEMORANDUM OPINION

**Before Justices Benavides, Perkes and Longoria**
**Memorandum Opinion by Justice Perkes**

Appellant Tina Gail Marek appeals her conviction for aggravated assault, a second-degree felony. *See* TEX. PENAL CODE §§ 22.01, 22.02(a)(2) (West, Westlaw through 2015 R.S.). The jury found Marek guilty and assessed punishment of twenty years' imprisonment. By three issues, Marek argues the evidence is legally insufficient to support the conviction.

The jury also found Marek guilty of intoxication assault,[1] a third-degree felony, *see id.* § 49.07(a)(1)(c) (West, Westlaw through 2015 R.S.). The trial court vacated the conviction on grounds that it constituted a double jeopardy violation. *See* U.S. CONST. amend. V. By a separate appeal, the State argues the trial court erred in vacating the conviction, contending the double jeopardy issue was not "ripe for judicial adjudication."[2] We affirm the trial court's judgment and dismiss the State's appeal as moot.

## I. BACKGROUND

Fifteen-year-old H.O.[3] testified he was riding his bicycle at night on Leary Lane in Victoria. H.O.'s friends, J.T. and K.K., were sharing a bicycle and following behind. H.O. stated he was in the right lane of the roadway when he was struck from behind by an automobile. H.O. suffered a deep laceration to his head, a concussion, a fractured

---

[1] The jury assessed punishment at ten years' imprisonment for the offense of intoxication assault.

[2] Appellate Cause No. 13-15-00383-CR is Marek's appeal of the aggravated assault conviction. Appellate Cause No. 13-15-00381-CR is the State's appeal of the trial court's order vacating Marek's intoxication assault conviction. Our analysis allows us to consider both causes in a consolidated opinion.

[3] Due to the age of the child complainant, we will refer to him by pseudonym only. We will likewise reference all child witnesses by pseudonym only.

ankle, and scarring to his back as a result of the collision.  H.O. could not remember many details concerning the collision.

J.T. testified that he was riding a bicycle behind H.O.  J.T. was pedaling the bicycle while K.K. stood on the "pegs" located on the back wheel.    J.T. stated that both bicycles had working reflectors.   J.T. testified that H.O. was riding his bicycle on the right side of the road, very close to the white line.   J.T. explained that two or three vehicles successfully passed them and were traveling forty miles-per-hour or less.   J.T. then observed a vehicle, which was later determined to be Marek's vehicle, traveling at a "high rate of speed."   J.T. explained that he could tell the vehicle was travelling fast because he observed the headlights "bouncing up and down pretty high . . . from the bumps in the road."   J.T. stated that "if you're going the speed limit, they don't bounce that high."

J.T. testified that as Marek's vehicle approached, K.K. pulled their bicycle off the road and into a ditch to avoid being hit.   J.T. then observed Marek's vehicle continue at the same rate of speed toward H.O. who was riding in the right lane near the "white edge of the road" approximately fifteen to twenty yards away.    He witnessed Marek's vehicle strike H.O. from behind.   J.T. did not observe Marek slow down, use her brakes, or attempt evasive action before her vehicle collided with H.O.   J.T. explained that lighting from a nearby building illuminated the roadway where the collision occurred.   J.T. recalled that the three boys were all wearing their "baseball clothes" which consisted of shorts and a red shirt.

K.K. testified that H.O.'s bicycle had reflectors on the pedals and under the seat. He recalled that, prior to the collision, two or three vehicles successfully passed the

3

bicyclists. K.K. first saw Marek's vehicle approaching and observed that she failed to stop at a stop sign. When he looked back again "[he] realized [they] would get hit if [they] didn't get out of the way." K.K. stated that he grabbed J.T. by the shoulders and pulled him into the ditch to avoid Marek's vehicle. K.K. then witnessed Marek's vehicle strike H.O. as he was riding near the side of the road. K.K. did not see Marek's vehicle slow down or otherwise try to avoid them. K.K. explained that there was a noticeable difference between the speed of Marek's vehicle and the previous vehicles that passed them. K.K. described the visibility on the road stating "I'm not saying it's not a dark street, but you can easily see." K.K. also explained that he did not obscure the bicycle's reflector while standing on the "pegs."

Radiologist Bruce Tharp, M.D., testified that he reviewed H.O.'s x-rays and determined that he suffered a fracture to his left ankle. Tharp stated that he has observed "quite a few" injuries as a result of car accidents and opined that automobiles were capable of causing death or serious bodily injury. Tharp concluded that H.O. suffered serious bodily injury as a result of being hit by Marek's vehicle.

Officer Robert Nichols with the Victoria Police Department responded to the scene that evening. Officer Nichols testified that he identified Marek as the driver of the vehicle that struck H.O. Marek admitted to Officer Nichols that she recently consumed five beers at a nearby bowling alley. Officer Nichols stated that Marek's vehicle had working headlights and H.O.'s bicycle had working reflectors. Officer Nichols testified that the speed limit on Leary Lane was thirty miles-per-hour.

4

After ensuring H.O. was in the care of paramedics, Officer Nichols administered a field sobriety test to determine whether Marek was intoxicated. Officer Nichols testified that Marek displayed six out of six clues of intoxication when he administered the horizontal gaze nystagmus test, indicating the presence of depressants in Marek's system. Officer Nichols then administered the "walk and turn" test. During the test, Marek displayed the following clues for intoxication: failure to maintain the start position; stepping off the line five times, making an improper turn, taking the wrong number of steps, and raising her arms for balance.

Next, Officer Nichols administered the "one leg stand" test. Marek displayed three of four possible clues of intoxication for this test and had difficulty understanding the instructions. During his interaction with Marek, Officer Nichols detected the odor of alcohol from her person. As a result of his investigation, Officer Nichols concluded that there was probable cause to believe Marek was intoxicated. Officer Nichols then obtained a search warrant for a sample of Marek's blood after she declined to provide a sample voluntarily. Officer Nichols also testified that H.O. was in compliance with state law and city ordinances by riding his bicycle in the right lane of the roadway.

Officer Jonathan Hein with the Victoria Police Department also responded to the scene of the crash. Officer Hein took photographs of a beer can located in Marek's vehicle. Officer Hein stated that the can was "cool to the touch." Officer Hein recalled there was "a very well-lit building and parking lot" located nearby.

5

Emily Bonvino, a forensic scientist with the Texas Department of Public Safety, testified regarding the results of Marek's blood test. The results showed that Marek had an alcohol concentration of .198 grams of alcohol per 100 milliliters of blood.[4]

Marek testified that she was driving thirty to thirty-five miles-per-hour that evening. She stated that she looked down at her phone and when she looked up she saw two boys and veered around them. Marek then claimed that H.O. darted in front of her vehicle and her vehicle collided with him. Marek admitted that she consumed five beers earlier in the evening. Marek acknowledged that the visibility was clear that night and her headlights were functioning properly. Marek admitted the collision was her fault.

Marek's boyfriend, Raymond Becton, was driving ahead of Marek in a separate vehicle. Becton testified that he passed the bicyclists ahead of Marek and told them to get out of the road. Becton claimed that one of the children was riding "in [the] oncoming traffic lane", while the other two "were just zigzagging back and forth in . . . the lane I was in." Becton did not see any reflectors on the bicycles. From his vantage point, Becton observed Marek's vehicle go into the left lane and then into a ditch. On cross-examination, Becton denied telling anyone that he saw the children "jumping the curb."

Marek's counsel recalled Officer Hein, who sponsored a video of a police interview with Becton. In the video, Becton tells Officer Hein that he saw reflectors on the bicycles. Becton also told Officer Hein that he observed the children "jumping the curbs."

---

[4] A person is intoxicated under the Texas Penal Code if the person's alcohol concentration is .08 grams of alcohol per 100 milliliters of blood or more. TEX. PENAL CODE ANN. § 49.01(2)(B) (West, Westlaw through 2015 R.S.).

The jury found Marek guilty of both aggravated assault and intoxication assault. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

By three issues, Marek argues the evidence is legally insufficient to support her conviction for aggravated assault. Specifically, Marek challenges the sufficiency of the evidence concerning causation, recklessness, and the deadly weapon finding.

### A. Standard of Review

"The standard for determining whether the evidence is legally sufficient to support a conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original); *see Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.). The fact-finder is the exclusive judge of the credibility of witnesses and of the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899; *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). Reconciliation of conflicts in the evidence is within the fact-finder's exclusive province. *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000). We resolve any inconsistencies in the testimony in favor of the verdict. *Bynum v. State*, 767 S.W.2d 769, 776 (Tex. Crim. App. 1989) (en banc).

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Cada v. State*, 334 S.W.3d 766, 773 (Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App.

7

1997)).   Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.   *Id*.

In the indictment, the State alleged that Marek committed the offense of aggravated assault by causing bodily injury to H.O. "by using and exhibiting a deadly weapon, namely a motor vehicle."[5]   Under a hypothetically correct jury charge, Marek is guilty of aggravated assault if she intentionally, knowingly, or recklessly caused bodily injury to H.O. by using or exhibiting a deadly weapon during the commission of the assault.   *See* TEX. PENAL CODE ANN. §§ 22.01, 22.02(a)(2).

## B.   Causation

By her first issue, Marek argues the evidence is legally insufficient to establish that Marek's "unsafe speed" and "failure to take evasive maneuvers" caused injury to H.O.

### 1.   Applicable Law

The Texas Penal Code provides that "[a] person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient."   TEX. PENAL CODE ANN. § 6.04(a) (West, Westlaw through 2015 R.S.).   Under section 6.04(a), a "but for" causal connection must be established between the defendant's conduct and the resulting harm.   *Robbins*

---

[5] The State also alleged in paragraph 1, count 1 of the indictment that Marek committed aggravated assault by causing "serious bodily injury" to H.O.   *See* TEX. PENAL CODE ANN. § 22.02(a)(1) (West, Westlaw through 2015 R.S.).   However, the State abandoned that theory at trial.

*v. State*, 717 S.W.2d 348, 351 (Tex. Crim. App. 1986). Two possible combinations exist to satisfy the "but for" requirement: (1) the defendant's conduct may be sufficient by itself to have caused the harm, regardless of the existence of a concurrent cause; or (2) the defendant's conduct and the other cause together may be sufficient to have caused the harm. *Id.* If the additional cause, other than the defendant's conduct, is clearly sufficient, by itself, to produce the result and the defendant's conduct, by itself, is clearly insufficient, then the defendant cannot be convicted. *Id.*

### 2. Analysis

The indictment alleged that Marek caused her vehicle to collide into H.O. "by driving the . . . vehicle at an unsafe speed, and/or failing to take evasive maneuvers." Marek maintains there is legally insufficient evidence to support either alleged cause.

Viewing the evidence in the light most favorable to the prosecution, the record reflects that two to three cars successfully passed the children prior to Marek's vehicle running one bicycle off the road and colliding with H.O. Both bicycles were traveling near the white line and in the right lane. Nevertheless, Marek's vehicle never slowed down or attempted to avoid H.O. We also note that Marek admitted that she was looking at her telephone just prior to the collision.

The record further reflects that the speed limit where the accident occurred was thirty miles-per-hour. J.T. estimated that other vehicles were traveling forty miles-per-hour or less, while Marek's vehicle was traveling at a "high rate of speed." K.K. testified that there was a noticeable difference between the speed of Marek's vehicle and the previous vehicles that passed them.

9

Marek does not identify any "other" cause which was clearly sufficient by itself to produce the collision. Thus, we hold that the jury could have reasonably inferred that there was no external factors that prevented Marek from noticing H.O. before she struck him. The jury heard evidence: (1) the bicycle H.O. was riding was equipped with reflectors underneath the seat and on the pedals; (2) the lights from a nearby building illuminated the area; (3) H.O. was wearing a red shirt; and (4) two to three vehicles had recently passed H.O. without issue. Although H.O. was reasonably visible to other drivers on the road, there was no evidence Marek made any attempt to avoid the accident.

In light of these facts, we conclude that a rational trier of fact could have found beyond a reasonable doubt that H.O.'s injuries would not have occurred but for Marek's conduct. *See* TEX. PENAL CODE ANN. § 6.04(a); *Johnson* 364 S.W.3d at 293–94; *Robbins*, 717 S.W.2d at 351. We overrule Marek's first issue.

## C. Recklessness

By her second issue, Marek argues "the evidence is legally insufficient to support that [Marek's] actions were 'reckless.'" We disagree.[6]

### 1. Applicable Law

Under Texas Penal Code section 6.03(c),

A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

---

[6] The indictment also alleged that Marek committed aggravated assault by acting intentionally or knowingly. However, we need not discuss the other culpable mental states because we conclude that there is legally sufficient evidence to show that Marek acted recklessly.

TEX. PENAL CODE ANN. § 6.03(c) (West, Westlaw through 2015 R.S.).

At the heart of reckless conduct is the conscious disregard of the risk created by the actor's conduct. *Williams v. State*, 235 S.W.3d 742, 751 (Tex. Crim. App. 2007). Mere lack of foresight, stupidity, irresponsibility, thoughtlessness, or ordinary carelessness do not suffice to constitute criminal recklessness. *Id.* Rather, recklessness requires the defendant to actually foresee the risk involved and to consciously decide to ignore it. *Id.* This combination of an awareness of the magnitude of the risk and the conscious disregard for consequences is crucial. *Id.* at 752–53. Whether a defendant's conduct involves "an extreme degree of risk" must be determined by the conduct itself and not by the resultant harm. *Id.* at 753. "Nor can criminal liability be predicated on every careless act merely because its carelessness results in death or injury to another." *Id.*

Mental culpability is of such a nature that it generally must be inferred from the circumstances under which the prohibited act occurred. *Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim. App. 1978); *Russo v. State*, 228 S.W.3d 779, 793 (Tex. App.—Austin 2007, pet. ref'd). A culpable mental state may be inferred by the trier of fact from the acts, words, and conduct of the accused. *Dues v. State*, 634 S.W.2d 304, 306 (Tex. Crim. App. 1982); *Griffith v. State*, 315 S.W.3d 648, 651–52 (Tex. App.—Eastland 2010, pet. ref'd). Whether the actor is aware of the requisite risk is a conclusion to be reached by the trier of fact from all the evidence and the inferences drawn therefrom. *Griffith*, 315 S.W.3d at 652. "The issue is not one of theoretical possibility, but one of whether, given

11

all the circumstances, it is reasonable to infer that the particular individual on trial was in fact aware of the risk." *Dillon*, 574 S.W.2d at 95.

### 2. Analysis

Distracted driving, driving at a dangerously high rate of speed, and driving while under the influence of alcohol are all factors from which a jury can infer a reckless mental state. *See Turner v. State*, 455 S.W.3d 280, 285 (Tex. App.—Waco 2014, pet. ref'd) (it was reasonable for the jury to infer defendant was aware of but consciously disregarded substantial and unjustifiable risk that his dangerously high speed could likely result in a collision); *Zorn v. State*, 315 S.W.3d 616, 621–22 (Tex. App.—Tyler 2010, no pet.) (there was sufficient evidence of recklessness based on speed of defendant's vehicle or level of intoxication); *Rubio v. State*, 203 S.W.3d 448, 452 (Tex. App.—El Paso 2006, pet. ref'd) (explaining that driving under the influence of alcohol can be used to show conscious disregard of a substantial risk); *see also Galvan v. State,* No. 13-14-00059-CR, 2016 WL 1393507, at *5 (Tex. App.—Corpus Christi Apr. 7, 2016, pet. ref'd) (mem. op., not designated for publication) (citing distracted driving, intoxication, and failure to break as evidence of recklessness); *Elliott v. State,* No. 13-13-00220-CR, 2015 WL 1869472, at *3 (Tex. App.—Corpus Christi, Apr. 23, 2015, no pet.) (mem. op., not designated for publication) (noting that defendant was voluntarily intoxicated and distracted at time of the accident; thus, there was legally sufficient evidence defendant was reckless).

The record shows that, at the time of the collision, Marek was driving at a high rate of speed, ignored a stop sign just before encountering the children, took her eyes from the road to look at her phone, did not apply her brakes or attempt to avoid the collision,

12

and was driving while having a blood-alcohol concentration more than twice the legal limit. We conclude a reasonable juror could have inferred from the circumstances that Marek was aware of, but consciously disregarded, the risk that her actions could result in a collision.   *See* TEX. PENAL CODE ANN. § 6.03(c); *Williams*, 235 S.W.3d at 751.

We acknowledge Marek's contrary testimony that she was driving no faster than thirty-five miles-per-hour and H.O. darted in front of her vehicle, as well as Becton's testimony that the children were "zigzagging" in the road.   However, as noted above, reconciliation of conflicts in the evidence is within the fact-finder's exclusive province. *Wyatt*, 23 S.W.3d at 30.   The jury, as the ultimate fact-finder, was free to believe all, some, or none of the testimony presented by the parties.   *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).   Accordingly, when we view the evidence in the light most favorable to the verdict, we conclude that the evidence was legally sufficient to establish a reckless mental state.   *See Johnson*, 364 S.W.3d at 293–94.   We overrule Marek's second issue.

## D.   Deadly Weapon Finding

By her third issue, Marek argues "the evidence is legally insufficient to support that [Marek's] vehicle was used as a deadly weapon."

### 1.   Applicable Law

The Texas Penal Code defines a "deadly weapon" as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."   TEX. PENAL CODE ANN. 1.07(a)(17)(B).   "To determine whether the evidence supports a deadly weapon finding in cases involving motor vehicles, we conduct a two-part analysis."

13

*Hilburn v. State*, 312 S.W.3d 169, 177 (Tex. App.—Fort Worth 2010, no pet.) (citing *Sierra v. State*, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009)). First, we "evaluate the manner in which the defendant used the motor vehicle during the felony." *Sierra*, 280 S.W.3d at 255. Second, we "consider whether, during the felony, the motor vehicle was capable of causing death or serious bodily injury." *Id.* "Serious bodily injury" means "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(a)(46) (West, Westlaw through 2015 R.S.). To satisfy the second inquiry, there must be evidence that "people were put in actual danger." *See Brister v. State*, 449 S.W.3d 490, 494 (Tex. Crim. App. 2014).

### 2. Analysis

To evaluate the manner in which the defendant used the motor vehicle, we must determine whether the defendant's driving was reckless or dangerous. *Sierra*, 280 S.W.3d at 255. We consider several factors to determine recklessness or dangerousness, such as: (1) intoxication; (2) speeding; (3) disregarding traffic signs and signals; (4) driving erratically; and (5) failure to control the vehicle. *Foley v. State*, 327 S.W.3d 907, 916 (Tex. App.—Corpus Christi 2010, pet. ref'd) (citing *Sierra*, 280 S.W.3d at 255–56). As noted above, we have concluded that there was legally sufficient evidence that Marek was driving recklessly. Nevertheless, we will consider those factors identified in *Sierra* to determine whether Marek's driving was "reckless and dangerous."

The evidence shows that Marek was intoxicated. Marek smelled of alcohol, failed the field sobriety tests, and had a blood-alcohol content greater than twice the legal limit.

14

The evidence also established that Marek was travelling noticeably faster than the other vehicles on the road. Finally, there was evidence that Marek disregarded a stop sign just prior to the collision. We conclude that a rational fact-finder could have concluded that Marek's driving was reckless or dangerous. *See Sierra*, 280 S.W.3d at 255–56.

Turning to the second inquiry, we also conclude that a rational jury could have determined that Marek's vehicle was capable of causing serious bodily injury at the time of the collision. The record reflects that Marek's vehicle did indeed cause extensive injury to H.O. when she struck him from behind as he was riding his bicycle. H.O. suffered a deep laceration to his head, a concussion, scarring to his back, and an ankle fracture which required surgery and physical therapy.

Viewing the evidence in the light most favorable to the verdict, we hold that the evidence is legally sufficient to support a deadly weapon finding. *See Johnson*, 364 S.W.3d at 293–94. We overrule Marek's third issue.

### III. STATE'S APPEAL

By one issue, the State argues that Marek's motion to vacate her intoxication assault conviction "on the grounds that the conviction violates the Double Jeopardy clause's protections against multiple punishments" was not "ripe for judicial adjudication" because "[Marek's] other conviction [was] not yet a final conviction[.]"

The Fifth Amendment to the United States Constitution's Double Jeopardy Clause offers protection against multiple punishments for the same offense. U.S. CONST. amend. V; *Garfias v. State*, 424 S.W.3d 54, 58 (Tex. Crim. App. 2014). A double jeopardy claim arises when the State seeks to punish the same criminal act twice under

15

two distinct statutes under circumstances in which the Legislature intended the conduct to be punished only once. *Langs v. State*, 183 S.W.3d 680, 685 (Tex. Crim. App. 2006).

The State concedes that a conviction for both aggravated assault and intoxication assault arising from the same criminal episode constitutes a double jeopardy violation. *See Shelby v. State*, 448 S.W.3d 431, 441 (Tex. Crim. App. 2014) (concluding that aggravated assault with a deadly weapon and intoxication assault are the "same" offense for double jeopardy purposes). Nevertheless, the State maintains that Marek's conviction for intoxication assault was not a final conviction at the time the trial court vacated the sentence because an appellate court had not yet affirmed the conviction.

Assuming arguendo that the State's position is correct, we are affirming Marek's conviction for aggravated assault in this consolidated opinion. Therefore, the State's issue is moot. *Cf. Burke v. State*, 80 S.W.3d 82, 85–86 (Tex. App.—Fort Worth 2002, no pet.) (concluding defendant's double jeopardy claim concerning intoxication assault conviction mooted where the court reversed conviction for aggravated assault). We dismiss the State's appeal as moot.

## IV. CONCLUSION

We affirm the trial court's judgment in appellate cause number 13-15-00383-CR. We dismiss the State's appeal in appellate cause number 13-15-00381-CR as moot.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
2nd day of September, 2016.

16