MARY'S OPINION HEADING 








NO. 12-09-00134-CR

 

IN
THE COURT OF APPEALS 

 

TWELFTH COURT OF
APPEALS DISTRICT

 

TYLER,
TEXAS

LINDA ZORN,                                              §                      APPEAL
FROM THE 241ST

APPELLANT

 

V.                                                                    §                      JUDICIAL
DISTRICT COURT OF

 

THE STATE OF
TEXAS,

APPELLEE                                                   §                      SMITH
COUNTY, TEXAS

                                                                                                                                                           


OPINION

            Linda
Zorn appeals her conviction for manslaughter.  In five issues, Appellant argues
that the evidence is legally and factually insufficient to support the verdict
and that the trial court erred by allowing the State to offer certain evidence
and by excluding certain testimony offered by the defense.  We affirm.

 

Background

On
the evening of June 27, 2008, Appellant struck a pedestrian, J. B. Nowell, with
her car as she drove through the Hide-A-Way Lake community outside Lindale,
Texas.  The collision occurred on a narrow roadway on a downhill curve.  Nowell
died from his injuries.  Appellant was found a short distance away, her car
crashed into a stand of small trees.  She was disoriented and uncooperative
with the police.  A subsequent evaluation of her blood indicated that she had a
blood alcohol concentration of 0.20 grams of alcohol per 100 milliliters of
blood or two and one half times the legal limit for operating a motor vehicle.[1]  

A
Smith County grand jury indicted Appellant for the felony offense of
manslaughter.  Appellant pleaded not guilty, and a jury trial was held.  The
jury found Appellant guilty as charged.  Following a trial on punishment, the
jury assessed punishment at imprisonment for twenty years and a fine of
$10,000.  This appeal followed.

 

Sufficiency of the Evidence

In
her first, second, and third issues, Appellant argues that the evidence is
legally and factually insufficient to support the verdict.  Specifically, she
argues that the trial court erred in overruling her motion for a directed
verdict and that there is insufficient evidence to establish that she acted
with criminal recklessness.  

Applicable
Law 

The
due process guarantee of the Fourteenth Amendment requires that a conviction be
supported by legally sufficient evidence.  See Jackson v. Virginia,
443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979); Laster
v. State, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); Willis v.
State, 192 S.W.3d 585, 592 (Tex. App.–Tyler 2006, pet. ref’d). 
Evidence is not legally sufficient if, when viewing the evidence in a light
most favorable to the verdict, no rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt.  See Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; see also Rollerson v. State,
227 S.W.3d 718, 724 (Tex. Crim. App. 2007).  A challenge to a trial court’s
denial of a motion for directed verdict is a challenge to the legal sufficiency
of the verdict.  See Canales v. State, 98 S.W.3d 690, 693
(Tex. Crim. App. 2003).

While
legal sufficiency review is all that is required by the U.S. Constitution, the
Texas Court of Criminal Appeals has determined that the Texas Constitution
requires further review of the factual sufficiency of the evidence.  Clewis
v. State, 922 S.W.2d 126, 129-30 (Tex. Crim. App. 1996).  Factual
sufficiency review differs from legal sufficiency review only slightly.  See
Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006).  In a
factual sufficiency review, we review the evidence without the light most
favorable to the verdict and we are authorized, “albeit to a very limited
degree,” to disagree with the jury’s resolution of contested factual issues.  See
id.; Watson v. State, 204 S.W.3d 404, 414, 417 (Tex.
Crim. App. 2006).  In a review of the factual sufficiency of the evidence, we
will conclude that the evidence is insufficient only if the great weight and
preponderance of the evidence contradicts the jury’s verdict or the verdict is
clearly wrong and manifestly unjust.  See Rollerson, 227 S.W.3d
at 724; Watson, 204 S.W.3d at 417.

Under
either standard, our role is that of appellate review, and the fact finder is
the principal judge of the weight and credibility of a witness’s testimony. 
Wesbrook v. State, 29 S.W.3d 103, 111–12 (Tex. Crim. App. 2000).  The
fact finder may choose to believe all, some, or none of a witness’s testimony. 
Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

The
sufficiency of the evidence is measured against the offense as defined by a
hypothetically correct jury charge.  See Malik v. State, 953
S.W.2d 234, 240 (Tex. Crim. App. 1997).  A hypothetically correct jury charge
“accurately sets out the law, is authorized by the indictment, does not
unnecessarily increase the State’s burden of proof or unnecessarily restrict
the State’s theories of liability, and adequately describes the particular
offense for which the defendant is tried.”  Id.

A
person commits manslaughter if she recklessly causes the death of an
individual.  Tex. Penal Code Ann.
§ 19.04(a) (Vernon 2003).  A person acts recklessly with respect to
circumstances surrounding her conduct or the result of her conduct when she is
aware of, but consciously disregards, a substantial and unjustifiable risk that
the circumstances exist or the result will occur.  Id. § 6.03(c)
(Vernon 2003).  The risk must be of such a nature and degree that its disregard
constitutes a gross deviation from the standard of care that an ordinary person
would exercise under all circumstances as viewed from the actor’s standpoint.  Id.;
Garza v. State, 50 S.W.3d 559, 564 (Tex. App.–Houston [1st Dist.]
2001, no pet.).  “At the heart of reckless conduct is conscious disregard of
the risk created by the actor’s conduct.”  Lewis v. State, 529
S.W.2d 550, 553 (Tex. Crim. App. 1975).  Recklessness can be applied generally
to the act of driving.  See Porter v. State, 969 S.W.2d 60, 63
(Tex. App.–Austin 1998, pet. ref’d).

In
this case, the State was required to prove that Appellant recklessly caused the
death of J. B. Nowell by operating a vehicle into Nowell while intoxicated.  See
Tex. Penal Code Ann. § 19.04.


Analysis

When
evaluating whether conduct is reckless, a finder of fact and a reviewing court
must examine (1) whether the act, when viewed objectively at the time of its
commission, created a “substantial and unjustifiable” risk of the type of harm
that occurred, (2) whether that risk was of such a magnitude that disregard of
it constituted a gross deviation from the standard of care that a reasonable
person would have exercised in the same situation, (3) whether the defendant
was consciously aware of that risk, and (4) whether the defendant consciously
disregarded that risk.  See Williams v. State, 235 S.W.3d 742,
755–56 (Tex. Crim. App. 2007).

At
trial and on appeal, the State argues that Appellant was reckless in the
operation of her vehicle because she drove at a speed that was inappropriate
for the setting and because she drove while intoxicated.  Appellant does not
argue that the speed of her driving cannot support the verdict.  Instead, she
argues that there was no competent evidence as to her speed at the time of the wreck.

Appellant
does not directly address the two issues raised specifically by the indictment,
namely that striking Nowell with a vehicle, and doing so while intoxicated,
created an unacceptable risk of his death.  Instead, she argues that the evidence
showed only that she was operating a vehicle in a twenty-five miles an hour
zone and that her car collided with Nowell.  She argues that there is no
evidence of excessive speed or other act which, under the standard articulated
in Williams, shows that she created and then
disregarded a substantial and unjustifiable risk.  We disagree.

Viewing
the evidence in a light most favorable to the verdict, there is evidence from
several eyewitnesses that Appellant was travelling at a rate of speed that was
unsafe for the circumstances.  Denver Gentry, a security officer with the
Hide-A-Way community, testified that the roads within the community were not
“built for speed.”  Kim Dockery, a resident, testified that the roadway where
Appellant struck Nowell was a curvy hill that required a motorist to slow
down.  Pat Kesey, Kristine Kubin, and Emilee Alcock testified that they saw
Appellant’s vehicle before the wreck travelling at what appeared to be high
rate of speed for the area.  Two witnesses testified that it was common for
pedestrians to be present on the streets in the community in the evening
hours.  

There
was a dispute about the speed at which Appellant was travelling.  Appellant did
not testify, but she called an expert witness who testified that she had to
have been travelling at a rate below the speed limit because, in his opinion,
she would not have been able to control the vehicle through the turn if she had
exceeded the speed limit.  Although the State did not offer the testimony of a
witness who had done a formal reconstruction of the wreck, several police
officers offered opinions that Appellant was travelling too fast for the
roadway.

Additionally,
there is the issue of Appellant’s intoxication.[2] 
The court of criminal appeals has held that intoxication is recklessness per
se.  See Ormsby v. State, 600 S.W.2d 782, 783–84 (Tex. Crim. App.
1979).  That holding no longer controls because it was based on the
legislature’s grouping the offense of intoxication manslaughter with the
offense of involuntary manslaughter.    See Burke v. State, 80
S.W.3d 82, 90–91 (Tex. App.–Fort Worth 2002, no pet.) (op. on reh’g).  The
legislature separated those offenses in 1994.  Id.  But that does
not mean that the act of driving while intoxicated could not, in this case, be
reckless conduct by Appellant.  And, there was ample evidence that Appellant
was intoxicated, including a high blood alcohol concentration as well as her
disorientation and demeanor following the wreck.[3] 

            When
viewed in a light most favorable to the evidence, we hold that a rational jury
could conclude that based either on the speed at which Appellant drove her
vehicle or on her level of intoxication that Appellant was aware of, but
consciously disregarded, a substantial and unjustifiable risk that a pedestrian
would be struck by her vehicle.  Appellant was intoxicated and driving too fast
on narrow roads clustered with pedestrians in her own neighborhood.  The jury’s
conclusion that she was reckless is reasonable.  Accordingly, we overrule
Appellant’s first and second issues.

We
reach the same conclusion with respect to the factual sufficiency of the
evidence.  As we will discuss in a following section, some of the testimony
about the speed of Appellant’s vehicle is problematic.  But the problem
presented is the specific estimate of speed by lay, and youthful, witnesses. 
Several lay witnesses testified, without objection, that Appellant was
travelling at too high a rate of speed.  For example, one witness testified
that when the car passed it looked like a bullet or a “big blur.”  Others
testified that she was travelling too fast or that the resultant impact was
powerful.  

Appellant
does not contest the evidence that shows she was intoxicated.  There was some
dispute as to whether Nowell was in the roadway when he was struck.  Appellant’s
expert witness testified that, in his opinion, it was “more likely than not
[that] the pedestrian would have been either in the street completely or kind
of on and off the street.”  A State’s witness testified that the area of impact
was “well off the roadway,” although he conceded that he had not done a formal
reconstruction of the wreck and that it was difficult to pinpoint the exact
location of the impact because of the way Appellant’s vehicle struck Nowell.

In
sum, viewing the evidence in a neutral light, a rational finder of fact could
have concluded that Appellant was travelling too fast for the conditions and
the roadway, failed to keep an adequate lookout, and was intoxicated.  In such
a situation, the jury’s conclusion that Appellant was reckless is not against
the weight and preponderance of the evidence, is not clearly wrong, and does
not represent a manifest injustice.  We overrule Appellant’s third issue.

 

Exclusion of Testimony

            In
her fourth issue, Appellant argues that the trial court erred in excluding the
testimony of a witness who would have testified that Appellant suffered from
various mental illnesses and took medicine for anxiety.  Appellant argues that
the trial court ruling violated her right to present a defense.

Background
and Procedural History

            Appellant
proposed to call Jean Davenport to testify about her interactions with
Appellant in the days and years that preceded the wreck.  Outside the presence
of the jury, the State objected to Davenport’s testimony based on counsel’s
preview of that evidence during her opening statement.  In order to make a
ruling, the trial court invited Appellant to present the proposed testimony
outside the presence of the jury.  Appellant did so.

            The
testimony proffered by Appellant showed that Jean Davenport is Appellant’s
friend.  They are members of the same church.  Appellant did not have any
immediate family in the area, and Davenport and her husband, who is also
Appellant’s minister, became a surrogate family for her.  For the nine years
that preceded that trial, Davenport assisted Appellant with her daily
responsibilities.  Appellant had been discharged from the military and was
disabled.  Davenport testified at the offer of proof hearing that Appellant had
been diagnosed with paranoid schizophrenia.  She also had colon surgery, and
Davenport helped Appellant deal with issues that arose between Appellant and
the Veteran’s Administration.  She said that she had a power of attorney for
Appellant for “about eight years.”  

Davenport
testified that Appellant was an alcoholic but that she had been sober for about
a year before the wreck.  She testified that she had Appellant involuntarily
committed because she had been suicidal.  She also testified that Appellant was
under a great deal of stress at the time of the wreck because her house was
being remodeled.  Appellant could not stay at the house at the time of the
remodeling.  Davenport testified that Appellant could achieve balance when she
was in familiar surroundings but that changes to her routine were very
difficult for Appellant to manage.  

The
State objected to this evidence on the grounds that it was hearsay, that
Davenport was not an expert witness and was not qualified to make a medical or
psychiatric diagnosis, and that a witness could not testify about another
person’s mental state.  Appellant’s attorney responded that Davenport should be
permitted to testify that Appellant does not have the “emotional responses or
the judgment abilities” that others may have or possess.  The trial court ruled
that the testimony was inadmissible for the guilt/innocence phase of the trial.

Standard
of Review and Applicable Law 

Generally,
we review a trial court’s decision to admit or exclude evidence under an abuse
of discretion standard.  See Willover v. State, 70 S.W.3d
841, 845 (Tex. Crim. App. 2002); see also Montgomery v. State,
810 S.W.2d 372, 379 (Tex. Crim. App. 1991) (op. on reh’g).  We reverse only
when the trial court’s decision was so clearly wrong as to fall outside the
zone of reasonable disagreement.  See Weatherred v. State, 15
S.W.3d 540, 542 (Tex. Crim. App. 2000).  We uphold the trial court’s ruling if
it is reasonably supported by the record and correct under any theory of law
applicable to the case.  See Willover, 70 S.W.3d at 845.

If
it is a defendant’s evidence that is excluded, an error can be a violation of
the defendant’s constitutional right to compel the attendance of witnesses in
his favor.  See Potier v. State, 68 S.W.3d 657, 659 (Tex.
Crim. App. 2002); see also Washington v. Texas, 388 U.S. 14, 18–19,
87 S. Ct. 1920, 1022–23, 18 L. Ed. 2d 1019 (1967) (Sixth Amendment insures
compulsory process to obtain favorable witnesses).  Evidentiary rulings rarely
rise to the level of denying the fundamental constitutional rights to present a
meaningful defense.  See Potier, 68 S.W.3d at 663.  There are two
circumstances in which the improper exclusion of evidence may establish a
constitutional violation: (1) when a state evidentiary rule categorically and
arbitrarily prohibits the defendant from offering relevant evidence that is vital
to his defense; or (2) when a trial court erroneously excludes relevant
evidence that is a vital portion of the case and the exclusion effectively
precludes the defendant from presenting a defense.  Id. at
659–62; Wiley v. State, 74 S.W.3d 399, 405 (Tex. Crim. App.
2002).

A
nonexpert witness may offer opinion testimony or testimony about inferences
made, but such testimony is limited to opinions or inferences that are
rationally based on the perception of the witness and are helpful to a clear
understanding of the witness’s testimony or the determination of a fact in
issue.  See Tex. R. Evid.
701.  Hearsay is a statement not made at trial that is offered in evidence to
prove the truth of the matter asserted.  Tex.
R. Evid. 801(d).  Unless it meets an exception, hearsay is not
admissible.  Tex. R. Evid. 802.

Analysis


Appellant
argues that she was denied her ability to present evidence that “if believed,
squarely brought Appellant’s mental status” into question and raised the issue
of “whether she was capable of being reckless as that term is defined in Texas
under [the facts of the case.]”  By excluding Davenport’s testimony, Appellant
argues that the jury “was left without vital information as to Appellant’s
ability to be reckless,” specifically whether she was able to appreciate and
then consciously disregard a substantial and unjustifiable risk.  

Appellant
does not cite any authority in support of her argument for admissibility of
this specific kind of evidence.  We agree with the State that some of this evidence
is inadmissible hearsay.  For example, Appellant’s diagnosis by a medical
doctor is an out of court statement that Appellant proposed that Davenport
repeat in court for the truth of the matter asserted.  And Appellant did not
present evidence that Appellant was unfamiliar with an automobile, or with the
neighborhood, or other experience–based information relevant to the issue of
whether she could appreciate and then disregard the risks involved in this
case.  Nor does Appellant argue that this evidence should be admissible to
explain Appellant’s awkward and inappropriate behavior following the wreck.  In
fact, Appellant’s counsel told the court during the hearing that she did not
contest that Appellant was intoxicated.

What
remains of the evidence proffered by Appellant is testimony that she was
paranoid, that she is “different” when she is out of her comfort zone, and that
she had stress in her life at the time of the wreck.  The court of criminal
appeals has held, and the State forthrightly acknowledges, that evidence about
the mental state of a defendant can be admissible when it is relevant to the
issue of mens rea.  See Ruffin v. State, 270 S.W.3d 586,
597 (Tex. Crim. App. 2008).  Texas does not recognize a diminished capacity
defense, but, for lack of a better term, psychological evidence is admissible
if it is relevant to the question of whether the defendant had the mens rea
to commit the crime.  See Jackson v. State, 160 S.W.3d 568, 573–74
(Tex. Crim. App. 2005).  In the Ruffin decision, the court drew
an analogy between a blind person and a person with a mental disease or
defect.  Ruffin, 270 S.W.3d at 593–94.  The court reasoned that
just as a blind person would be permitted to offer evidence that his blindness
prevented him from understanding that a person he shot at was a police officer,
so too could a person suffering from mental delusions offer evidence about
those delusions if they prevented him from apprehending that the person he shot
at was a police officer.  Id. at 594.

In
that case, the court held that the proffered testimony that the defendant,
because of a mental disease and attendant delusions, believed he was shooting
at someone other than police officers was “clearly relevant.”  Id.
at 596.  By contrast, this case turns, essentially, on whether Appellant
understood and disregarded the risk she undertook in driving while
intoxicated.  The nonhearsay portion of Davenport’s testimony allows the
conclusion that Appellant was easily flustered, occasionally suicidal, and in a
state of anxiety the day before the wreck.[4] 
Rule 701 does not prevent the admission of this kind of evidence because, as
here, it is based on the witness’s perception of Appellant.  

Because
the right to present a defense is a constitutional right, many jurists would
allow this testimony, if only in an abundance of caution.[5] 
But as to the relevance of the evidence, we do not conclude that Davenport’s
testimony was directly germane to the question of whether Appellant understood
the risk she created.   Her testimony is not that Appellant suffered from a delusion
that caused her to fail to apprehend that she was driving or intoxicated or to think
that she was driving in a different locale.  Nor did her testimony show or tend
to show that Appellant could not understand the risks her actions created.  In
this way, this case is more like Mays v. State, No. AP-75,924,
2010 Tex. Crim. App. LEXIS 480, at *28–29 (Tex. Crim. App. Apr. 28, 2010).  In
that case, the defendant’s mental illness evidence explained why he acted––he
was paranoid and thought the deputies had “mistreated” him––but did not touch
on the mens rea element of the offense.  Id.  Similarly,
in this case, Appellant’s lowered ability to navigate stressful situations
explains why she was drinking and why she was in a hurry, but does not serve to
negate the mens rea or to show that she could not appreciate the risk
that her conduct created.  We overrule Appellant’s fourth issue. 

 

Opinion Testimony

In
her fifth issue, Appellant argues that the trial court erred in allowing six
witnesses to testify as to the speed at which Appellant was travelling.  The
State does not argue that such evidence is proper, but instead argues that
Appellant failed to preserve a complaint and that any error is harmless.  

Applicable
Law

As
a prerequisite to presenting a complaint on appeal, there must be a
contemporaneous objection in the trial court.  Tex. R. App. P. 33.1.  Even the erroneous admission of
evidence will not result in reversible error if the same evidence is admitted
elsewhere in the trial without objection.  See Saldano v. State,
232 S.W.3d 77, 102 (Tex. Crim. App. 2007); Leday v. State, 983
S.W.2d 713, 718 (Tex. Crim. App. 1998).  

Analysis


            Several
witnesses testified about having seen Appellant’s vehicle travelling through
the Hide-A-Way Lake community before the wreck.  Several other witnesses
testified as to their impressions based on having arrived at the scene
following the wreck.  Each witness offered some quantitative assessment of
Appellant’s rate of travel.  We will discuss the testimony of each witness
individually.  

Detective
Goodman

In
a bench conference, Appellant’s counsel stated that she objected to testimony
from Detective Goodman that it was a “high–impact collision.”  That objection
was overruled.  The State then asked the detective, “[H]ow would you describe
the impact?”  Appellant did not object when he described the impact as “very
forceful.”  

An
objection lodged at a bench conference is sufficient to preserve a complaint.  See
Ethington v. State, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991). 
However, in this instance, it appears that the State was attempting to ask a
more direct question and avoid Appellant’s objection.  On appeal, Appellant
asserts that Goodman testified that it was a “high–speed impact.”  That was not
his testimony.  Goodman testified that it was a very forceful impact and later
testified, without contemporaneous objection, that it was consistent with
someone travelling faster than the speed limit.  Because Appellant did not
object to the testimony about the forcefulness of the impact, no complaint is
preserved for appellate review.  Assuming Appellant preserved a complaint as to
Goodman’s testimony that Appellant was exceeding the speed limit, such evidence
is not reversible error in this case because Appellant did not object when
other witnesses offered the same testimony.  See Leday,
983 S.W.2d at 718. 

Emilee
Alcock

The
State asked fourteen year old Emilee Alcock the following question, “About how
fast would you estimate just approximately do you think [Appellant’s vehicle]
was going?”  Appellant objected on the basis of Alcock’s lack of qualifications
to answer the question, pointing out that she was not old enough to have a
driver’s license.  The court overruled the objection, and Alcock estimated that
Appellant was travelling at thirty–five to forty miles an hour before the
collision.  

The
State agrees that it was improper to allow Alcock to estimate the speed of
Appellant’s vehicle.[6]  The State
argues that Appellant waived this objection because she failed to object to
other witnesses who testified as to their opinions about the speed of
Appellant’s vehicle.  However, no other witness made a specific estimate about
the speed of the vehicle.  Several witnesses testified that Appellant was
travelling over the speed limit.  And others testified that Appellant was
travelling too fast for the roadway.  There was no objection to that testimony,
so any error in admitting Alcock’s statement that Appellant was travelling too
fast is not reversible error.  See Leday, 983 S.W.2d at
718.

Alcock’s
specific, numerical estimate of the speed of Appellant’s vehicle was not
duplicated by the other witnesses.  Any qualifications the fourteen year old
Alcock possessed to make a specific estimate as to the speed of Appellant’s
vehicle were not presented by the State before it elicited that estimate from
her.  Nevertheless, we hold that this error is harmless.  See Tex. R. App. P. 44.2(b); Johnson
v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).  Alcock’s
specific estimate of the speed is not inconsistent with the testimony of other
witnesses and may actually have served to damp down the jury’s estimate of the
speed the vehicle was travelling.  Cf. Ochoa v. State, 994
S.W.2d 283, 285 (Tex. App.–El Paso 1999, no pet.) (error in admitting radar
evidence harmless because defendant did not object to officer’s testimony that,
in his opinion, appellant exceeded speed limit).  Furthermore, it is unlikely
that the jury was unreasonably swayed by the testimony of a fourteen year old
as to the speed of a motor vehicle, especially in this instance where the State
did not offer any foundation on which the jury could conclude that Alcock had
any basis to make such an estimate.  Accordingly, we hold that any error in the
admission of Alcock’s specific estimate of the speed of Appellant’s vehicle did
not have a substantial and injurious effect or influence in determining the
jury’s verdict.  After examining the record as a whole, we have a fair
assurance that any error did not influence the jury, or had but slight effect. 
See Morales v. State, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). 

Kristin
Kubin

Kristin
Kubin answered in the affirmative when asked, “And do you feel like that car
was going faster than 25 miles an hour?”  At the time of trial, Kubin was a
young person not yet of legal driving age.  Appellant did not object to this
testimony and has not preserved a complaint about this testimony for appellate
review.  See Tex. R. App. P.
33.1.  

Pat
Kesey

Pat
Kesey testified that Appellant’s car was travelling “fast” and that it appeared
to her to be a “red streak.”  She also answered in the affirmative when asked if
Appellant was travelling “way too fast” for the road.  Appellant did not object
to this testimony and has not preserved a complaint about this testimony for
appellate review.  See Tex. R.
App. P. 33.1.  

Denver
Gentry 

Denver
Gentry, a supervisor of patrol officers working within Hide-A-Way Lake,
testified that in his estimation, Appellant was travelling over the speed limit
at the time of the wreck.  Appellant did not object to this testimony and has
not preserved a complaint about this testimony for appellate review.  See
Tex. R. App. P. 33.1.  

Aaron
Goodwin

Aaron
Goodwin, a paramedic, testified that there was “a lot of speed involved” based
on his assessment of the damage to the vehicles and the injuries.  Appellant
did not object to this testimony and has not preserved a complaint about this testimony
for appellate review.  See Tex.
R. App. P. 33.1.  

Detective
Martin

Detective
Martin testified that he was not an accident reconstruction expert, but he
described the accident as a “high–force impact.”  Appellant did not object to
this testimony and has not preserved a complaint about this testimony for
appellate review.  See Tex. R.
App. P. 33.1.  

Conclusion

Appellant
objected to Alcock’s testimony in which she estimated the speed of Appellant’s
vehicle immediately before the wreck.  Appellant did not object to several
other witnesses who testified that Appellant was driving too fast or that the
impact of the wreck was powerful.  Those complaints, therefore, are not
preserved for our review.  To the extent that Alcock’s testimony is the same as
the testimony of the other witnesses admitted without objection, Appellant has
not shown reversible error.  Any error in the admission of a specific estimate
of the speed of Appellant’s vehicle is harmless.  We overruled Appellant’s
fifth issue.

 

Disposition

Having
overruled Appellant’s five issues, we affirm the judgment of the
trial court.

 

                                                                                                Sam Griffith

                                                                                                       
  Justice

 

 

 

Opinion delivered May 28, 2010.

Panel consisted of Worthen, C.J.,
Griffith, J., and Hoyle, J. 

 

 

 

 

(PUBLISH)









[1] See Tex. Penal Code Ann. § 49.01(2)(B)
(Vernon 2003).





[2] There is no impediment to
charging Appellant with manslaughter even if intoxication manslaughter had also
been available as a potential charge. See Burke v. State,
28 S.W.3d 545, 549 (Tex. Crim. App. 2000); see also Lomax v. State,
233 S.W.3d 302, 312 n. 32 (Tex. Crim. App. 2007).  

 





[3] The Texas Penal Code defines
“intoxicated” as either (1) not having the normal use of mental or physical
faculties by reason of the introduction of alcohol, a controlled substance, a
drug, a dangerous drug, a combination of two or more of those substances, or any
other substance into the body; or (2) having an alcohol concentration of 0.08
or more. Tex. Penal Code Ann. §
49.01(2)(A), (B) (Vernon 2003). 





[4] Davenport was more specific when
she testified during the punishment phase of the trial.  She testified that
Appellant drank that day because of the stress of having her home repainted and
the concomitant disruption to the orderliness of her life.  

 





[5] In Ruffin, the
trial court allowed lay testimony but not expert testimony as to the
defendant’s delusional thinking at or near the time of the assault.  Ruffin,
270 S.W.3d at 589, 597.





[6] The relevant portion of the
brief reads as follows:  “Appellant then argues that Emilee Alcock was
improperly allowed, over [Appellant’s] objection, to estimate the speed of
Appellant’s vehicle. [] This is true.”